18817

PIGGY PARK ENTERPRISES, INC., and Maurice Bessinger, Respondents, v. Robert P. SCHOFIELD and Carolina Enterprises, Inc., Appellants.

(162 S. E. (2d) 705)

*Messrs. Willcox, Hardee, Houck, Palmer & O'Farrell,* of Florence, *for Appellants,*

*Messrs. Dusenbury & Dusenbury,* of Florence, *for Respondent,*

August 13, 1968.

BUSSEY, Justice.

The plaintiffs-respondents, as joint lessees of certain real property in Florence, South Carolina, under a lease from the appellant, Robert P. Schofield, Jr., instituted this action to recover damages allegedly flowing from a breach of a covenant contained in the lease. What connection, if any, the appellant Carolina Enterprises, Inc. has with the controversy does not readily appear from either the pleadings or the evidence. The jury returned a verdict in favor of respondents in the amount of $27,150.00, presumably against

Schofield alone, who moved for a judgment *non obstante veredicto* and, in the alternative, for a new trial. The motion for judgment *non obstante veredicto* was denied, but the trial judge, by order *nisi,* reduced the verdict by the sum of $11,-550.00, which amount was remitted.

The lease, dated November 24, 1961, covered a vacant lot in the City of Florence, on the west side of South Irby Street in the block north of Cherokee Road, measuring approximately 90 feet in front and 450 feet in depth. The term of the lease was ten years with a renewal option, and the agreed rental was $6,900.00 per year, payable in monthly installments of $575.00. The lessor agreed to construct on the lot a building according to the plans and specifications of the lessees, with the lessor to expend therefor not exceeding $25,000.00, and the lessees to pay any cost of the building in excess of such sum. The use for which the premises were leased was that of a drive-in restaurant. The evidence is undisputed that it was in the contemplation of the parties that the lessees, in addition to paying the cost of the building in excess of $25,000.00, would expend approximately $50,-000.00 for inside and outside equipment and installations for the drive-in restaurant. The evidence is that the lessees actually spent $3,000.00 for the cost of the building in excess of $25,000.00, and the sum of $49,858.64 for various equipment which included not only equipment and fixtures inside the restaurant building but various signs, canopies, electronic ordering system, etc., a substantial portion of which became affixed to and a part of the realty.

The building was completed and the lessees commenced operation of the business on or about June 1, 1962. During the early part of the year 1965 the lessees ceased to operate upon the premises and for a number of months subleased the same to certain parties for a lesser rental than was being paid to the lessor. The lesses continued to pay the rent until December 1, 1965, and then ceased doing so. From some time in the fall of 1965 until August 1966 the premises were vacant, but at that time either a lease or sublease,

apparently with the consent of all parties concerned, was entered into with one Poulos, by the terms of which he was to pay a rental of $400.00 per month for the first year and a rental of $450.00 per month for the remainder of the term of the original lease. The lessees at that time sold to Poulos the equipment which originally cost in excess of $49,000.00 for the sum of $7,500.00. The lessor counterclaimed in this action for the balance of the rent for the term.

The provision of the lease which gave rise to this controversy is as follows:

"Lessor agrees and covenants to obtain from Marie B. Rogers, owner of adjacent property south of leased premises, a right of way or easement for egress and ingress to leased premises over and across property of Marie B. Rogers. Said right of way or easement will provide a way of egress and ingress to the leased premises from Cherokee Road."

That the foregoing covenant was breached by the lessor is not denied, he not having at any time made any effort whatever to obtain for the lessees the easement which he covenanted to obtain. It was the lessor's contention, however, that the lessees had waived the breach by accepting, occupying and using the leased premises, without the right of way, paying the rent thereon from June 1, 1962, when the building was completed, until December 1, 1965. The lessor urges that such conduct constituted waiver as a matter of law, and that he was entitled to a directed verdict on that ground. Such contention is clearly without merit. The respondent Bessinger testified that when they first opened for business he thought that the easement had been obtained; that for a time his customers used the ingress and egress over the Rogers property to Cherokee Road, and that he did not know the easement had not been obtained until a fence was constructed by the agent of Marie B. Rogers to prevent the use of such ingress and egress; that he repeatedly protested to the lessor and was put off by the lessor with the promise that he was still working on obtaining the easement and that he would yet do so. The testi-

mony of the lessor, Schofield, was in sharp conflict with that of Bessinger, which presented a jury issue as to whether or not there was any waiver of the breach, and such jury issue has been resolved against the lessor.

The appellant contends that the trial judge erred in permitting the respondent Bessinger to, testify as to the value or amount of his capital investment in and on the leased premises, contending that such evidence had no relevance to the issues involved. The trial court ruled in admitting such evidence that the costs of the improvements by the lessees were admissible as they related to the value of the lease both with and without the easement; and instructed the jury that such costs were not themselves a measure of damage, but were for the consideration of the jury in determining the value of the lease with and without the easement. The record does not contain his charge, but from various rulings in connection with the admission of evidence, it is obvious that he submitted to the jury as the sole measure of damages the difference, if any, between the value of the leasehold with the easement which the lessor covenanted to provide and its value without such easement.

We quote the following from 51C C. J. S. Landlord and Tenant § 247, p. 643:

"The measure of damages usually laid down for breach of a covenant of the lessor with respect to the condition or use of the demised property is the reduced rental value of the property, that is, the difference between the rental value of the proprty if the covenant had been complied with, and its rental value in. the absence of such compliance; and, if the contract is made for a particular use by the lessee, the rental value for that use will be the standard by which damages may be awarded."

The weight of authority is to the effect that the difference in rental value has to, be determined as of the time of the breach. In this connection see *Brummitt Tire Co. v. Sinclair Refining Co.*, 18 Tenn. App. 270, 75 S. W. (2d) 1022, and authorities therein cited.

The record does not suggest that either party contended for any other measure of damages in the trial of the instant case. The lease stated the purpose for which the leased property was to be utilized, and the evidence is undisputed that the lessor was advised, in the course of the negotiations for the lease, of the importance to the success of the business venture of the lessees of a rear entrance to the demised property for the purpose of access to and from Cherokee road, and the fact that the lessees would spend approximately $50,-000.00 in equipping and improving the demised premises.

The record discloses that the lessor purchased the demised premises for the purpose of the instant lease and that his total investment in the lot and building did not greatly exceed the investment by the lessees. The covenant with respect to the easement was not effectively breached until after the lessees had completed their capital expenditures. Since the value of the leasehold had to be determined as of the time of the breach, it logically follows that the value thereof could not be determined without taking into consideration the capital expenditures made by the lessees. We think there was no error in the admission of the evidence of the capital expenditures for the limited purpose for which such were admitted. The verdict of the jury would indicate that, in accordance with the instructions of the judge, the jury considered such evidence only insofar as it affected the value of the leasehold at the time of the breach, and the jury did not undertake to compensate the lessees for the capital expenditures as either a measure or element of damages.

The lessor further contends that the lessees adduced no evidence upon which a jury could assess damages, other than speculative, and that, in any event, the verdict was so excessive as to show passion, prejudice or caprice on the part of the jury, thus warranting a new trial.

It is, of course, true that the existence or amount of damages cannot be left to conjecture, guess or speculation.

"As a general rule, the evidence should be such as to enable the court or jury to determine * * * the amount of

damages with reasonable certainty or accuracy; and it is sufficient if they are so established.

"Proof of the amount of loss with absolute or mathematical certainty is not required, and it does not matter that the determination of damages depends to some extent on the consideration of contingent events. So, it has been held sufficient if a reasonable basis of computation is afforded, even though the result may be only approximate, or to adduce evidence which is the best the case is susceptible of under the circumstances and which will permit a reasonably close estimate of the loss." 25A C. J. S. Damages § 162(2), p. 80. Cf. *Powers v. Calvert Fire Ins. Co.,* 216 S. C. 309, 57 S. E. (2d) 638, 16 A. L. R. (2d) 1261; *S. C. Electric & Gas Co. v. Aetna Ins. Co.,* 233 S. C. 557, 106 S. E. (2d) 276.

The undisputed evidence is to the effect that the lessees sustained a financial loss in their business venture far in excess of the amount of the jury verdict. The precise question, however, which the jury, under instructions from the court, undertook to determine, the difference in the value of the leasehold as a result of and at the time of the breach of the covenant, was at best difficult to ascertain. A review of the evidence, however, convinces us that it afforded a reasonable basis for the computation of this measure of damages by the jury. Bessinger testified that the leasehold, without the easement provided for by the covenant, was of no real value to him. And, that with the easement it had a value at least equal to the total of his capital expenditures and the agreed rent. The premises were vacant and unused for approximately a year, and at the time of the trial bringing or producing $175.00 per month less than the agreed rental, from a tenant who had the benefit not only of the premises of the lessor, but the benefit of a substantial portion of the improvements made by the lessees. A difference of $175.00 per month in the rental rate alone would amount, over the ten year term of the lease, to the sum of $21,000.00. Not considered in this calculation is the enhanced value of the leasehold as a result of the im-

provements and additions made by the lessees prior to the breach by the lessor.

The contention of the appellant that the verdict was so excessive as to show passion, caprice or prejudice on the part of the jury is totally without merit. A review of the evidence convinces us that an even higher verdict could well have been rendered by the jury without subjecting the jury to any criticism of having been actuated by caprice, passion, prejudice or other improper motive.

The judgment of the lower court is, accordingly,

Affirmed.

Moss, C. J., and LEWIS, BRAILSFORD and LITTLEJOHN, JJ., concur.