0718

Juanita B. KINCAID and Beverly K. Davidson, a/k/a Beverly K. McLeod, Respondents v. The LANDING DEVELOPMENT CORPORATION, Resort Management Group, Inc., and Resort Construction Corporation, Appellants.

(344 S. E. (2d) 869)

Court of Appeals

*Howell V. Bellamy, Jr.* and *Henrietta U. Golding,* of *Bellamy, Rutenberg, Copeland, Epps, Gravely & Bowers,* Myrtle Beach, *for appellants.*

*John R. Clarke* and *Steven H. John,* of *Law Offices of John R. Clarke,* North Myrtle Beach, *for respondents.*

Heard April 16, 1986,

Decided May 19, 1986.

SHAW, Judge:

This is an action for negligent construction and breach of warranty. Appellants The Landing Development Corporation (LDC), Resort Management Group, Inc. (RMG), and Resort Construction Corporation (RCC) appeal from a jury verdict awarding respondents Juanita Kincaid and Beverly K. Davidson $19,800.00 actual damages and $13,500.00 punitive damages. We affirm.

In an action at law, tried by a jury, this court's jurisdiction extends only to the correction of errors; a factual finding by the jury will not be disturbed if the

record discloses any evidence which reasonably supports the jury's findings. *Pittman v. Galloway*, 281 S. C. 70, 313 S. E. (2d) 632 (Ct. App. 1984).

On February 13, 1978, Juanita Kincaid and her husband entered into an agreement with LDC to purchase a lot in a subdivision, known as The Landing, owned and developed by LDC. RMG was the sales and marketing agent for this development. LDC then contracted with RCC to construct a house according to plans Kincaid had selected. Kincaid and her husband, together with Beverly Davidson, their daughter, purchased the property by deed for $55,080.00 on July 12, 1978. The house was bought for Davidson and she and her minor son moved in the first week of August, 1978. Subsequently, Kincaid's husband died and Davidson became a one-half owner in the property. Kincaid and Davidson brought suit in September of 1983.

The appellants contend the trial court erred in (1) charging the jury violation of a building code is negligence *per se*, (2) permitting the jury to view the house prior to testimony by a structural engineer on behalf of the appellants, (3) failing to direct verdicts against Kincaid and Davidson while directing verdicts against the appellants, (4) permitting witnesses offered by Kincaid and Davidson to testify as experts, (5) failing to strike punitive damages, (6) permitting Kincaid and Davidson to amend their prayer for relief, (7) failing to direct a verdict for RMG, and (8) failing to grant a continuance, change of venue, or a mistrial to appellants.

(1)

The record contains numerous references by witnesses for the homeowners to violations of the "Standard Building Code." The trial court charged the jury violations of a standard building code is negligence *per se*. The appellants contend this was error since the homeowners failed to prove the alleged "Standard Building Code" was ever adopted by any local authority. Witnesses for the homeowners testified the code was recognized by the local industry, but no ordinance adopting the code was offered into evidence. Violation of a statute is negligence *per se*. *Coleman v. Shaw*, 281 S. C. 107, 314 S. E. (2d) 154 (Ct. App. 1984). However, local ordinances are not subject to judicial

notice. *Hill v. City of Hanahan*, 281 S. C. 527, 316 S. E. (2d) 681 (Ct. App. 1984).

Thus, absent proof of adoption by a local authority, the trial court technically erred in charging the jury violation of the alleged "Standard Building Code" was negligence *per se*. However, the trial judge had previously directed a verdict for the homeowners on the question of liability, leaving only the question of damages to the jury. The trial judge carefully instructed the jury violation of the alleged building code was not recklessness, willfulness, or wantonness *per se* and could only be considered in connection with all of the other facts. Consequently, we hold the erroneous charge was not prejudicial and, thus, does not warrant reversal. *Priest v. Scott*, 266 S. C. 321, 223 S. E. (2d) 36 (1976).

During the trial, the court granted the homeowners' motion for the jury to view the house. The appellants complain about the timing of the view. Specifically, they allege the trial court erred in permitting the view before the testimony of a structural engineer for the appellants. A jury view of a scene in question is a matter within the discretion of the trial judge. S. C. Code Ann. § 14-7-1320 (1976); *City of Columbia v. Jennings*, 288 S. C. 79, 339 S. E. (2d) 534 (Ct. App. 1986). The trial judge's decision will not be reversed absent an abuse of discretion. The judge permitted the viewing before the engineer's testimony so the judge could attend a scheduled conference with the sheriff concerning "important law enforcement matters ... to do with ... the enforcement of the criminal code of the state." Under these circumstances, we find no abuse of discretion.

(3)

The trial judge directed a verdict for the homeowners on the issue of liability. On appeal from this order, we must view the evidence and all reasonable inferences in a light most favorable to the appellants. *Clayton v. General Motors Corporation*, 277 S. C. 259, 286 S. E. (2d) 129 (1982). Wayne Vereen, a witness for the appellants, testified on direct examination to construction defects in the house. Also, he gave an estimate as to the cost of repairs. John Simko, another witness for the appellants, agreed with Vereen. Based on this testimony, the trial court correctly di-

rected a verdict for the homeowners. We note the record is replete with other evidence of negligent construction.

The appellants assign error to the trial judge for ■ denying them a directed verdict on the issue of damages and for charging the jury on the applicable law of damages.

In considering whether denial of appellants' motion was correct, we view the evidence and all inferences in a light most favorable to the homeowners. *Collins Cadillac, Inc. v. Bigelow-Sanford, Inc.,* 276 S. C. 465, 279 S. E. (2d) 611 (1981).

The appellants concede the trial judge's charge on the measure of damages is substantially correct. However, they contend there is no evidence in the record to establish the measure of damages under either the negligence or warranty theory. Specifically they argue there is no testimony regarding the difference in the value of the house had it been properly constructed and its value in its defective condition.

The trial judge correctly charged the jury the applicable measure of damages could be shown by cost of repairs. Contrary to the appellants' argument otherwise, a plaintiff is not required to prove the repairs were actually made. We hold a competent estimate of the cost of repairs is sufficient to create a factual question for the jury. *Newman v. Brown,* 228 S. C. 472, 90 S. E. (2d) 649 (1955).

The homeowners introduced two written estimates of repair costs to their home. The record also contains testimony regarding the estimates. Witnesses for the appellants also testified as to estimated repair costs. Thus, we find the record contains ample evidence of damages to sustain the trial judge's denial of a directed verdict to the appellants.

(4)

The appellants attack the trial judge's qualification of ■ Gary Wiggins and Steven Richel as expert witnesses for the homeowners. Qualification of witnesses as experts and the admissibility of their testimony is a matter left to the discretion of the trial judge. *South Carolina Dept. of Social Services v. Bacot,* 280 S. C. 485, 313 S. E. (2d) 45 (Ct. App. 1984).

Gary Wiggins, a former building inspector for the City of Myrtle Beach, testified he was president of consulting Services, Inc., at the time of trial. The firm advises architects, engineers, and contractors on construction problems. Wiggins was a building inspector for sixteen (16) years. He holds a license from South Carolina concerning residential building and a general contractors license. Wiggins also testified to his educational background and professional activities, including membership on national committees concerning building code administrators.

Steven Richel, a licensed civil engineer, testified to his educational background and his work with Georgetown Steel, his employer. He designs foundation structures and buildings, writes their specifications, and estimates the value of contracts. Thus he is familiar with material and labor costs.

Based on this evidence in the record, we find the trial judge did not abuse his discretion.

(5)

The appellants next assign error to the trial court for refusing to strike punitive damages because the homeowners failed to prove any conduct by the appellants warranting punitive damages.

A motion to strike is addressed to the sound discretion of the trial judge whose decision will not be reversed absent an abuse of discretion. *Totaro v. Turner*, 273 S. C. 134, 254 S. E. (2d) 800 (1979).

There is considerable testimony in the record concerning alleged deficiencies in the building of the house in question. Whether these deficiencies resulted from reckless, wanton, or willful conduct, thus justifying punitive damages, was properly left to the jury by the trial judge.

(6)

The homeowners originally sought $50,000.00 in damages. They subsequently moved to amend this to $75,000.00 in damages. During the trial, the homeowners again moved to increase the damages request to $100,000.00. The trial judge granted this motion and appellants claim this was error.

Again, this is a matter within the trial judge's discretion. S. C. Code Ann. § 15-13-920 (1976); *Mylin v. Allen-White Pontiac, Inc.*, 281 S. C. 174, 314 S. E. (2d) 354 (1984). Appellants, here, have shown no prejudice to their case and certainly no "manifest injustice." 314 S. E. (2d) 354, 357 (1984). In fact, the total jury verdict ($33,300.00) is less than the original award requested by the homeowners.

(7)

The appellants also claim the trial court erred in refusing to direct a verdict for RMG since it was merely the sales and marking agent for the development.

The trial court ruled the evidence revealed "an amalgamation of corporate interests, entities, and activities so as to blur the legal distinction between the corporations and their activities." We agree.

The record reveals Roger Van Wie is the Vice President of LDC, RMG, and RCC. He is also a shareholder in each corporation. The other shareholders of all three corporations are W. H. Van Wie, Roger's father; Jeof Van Wie, Roger's brother; and Ray Floyd, Roger's brother-in-law. Floyd is also an officer in all three corporations. When the homeowners' house was built, all three corporate offices were located at the same place. Davidson testified she called RMG concerning problems with the house and someone would then come to the house to correct the problem. A letter was introduced into evidence notifying the homeowners RMG was the project developer and RMG's Vice President, Ray Floyd, would handle all construction questions. Another letter to the homeowners carries a letterhead, "Resort Management Group Inc.", with a notation, "A Development, Construction, Sales, and Property Management Company." Based on this evidence, we affirm the trial court's ruling.

(8)

Finally, the appellants allege the trial court erred in denying their motions for a continuance, a chance of venue, and a mistrial because they were prejudiced by pre-trial publicity and by remarks of the homeowners' attorney at trial.

First, regarding pre-trial publicity, the various motions denied are addressed to the trial judge's discretion. *Haselden v. Atlantic Coastline Ry. Co.*, 214 S. C. 410, 53 S. E. (2d) 60 (1949).

The pre-trial publicity complained of consists of articles about the lawsuit in a local newspaper. One article appeared the day before trial began; the other appeared the day trial began. The trial judge questioned the jury venire about the articles and, *sua sponte*, excused those members who had read the articles. The judge then questioned the trial jurors and two (2) indicated some knowledge about the articles. One of the jurors, Bonnie J. Warner, stated she might have scanned over the articles, but did not remember them. The other juror, Enoch O. Leigh, stated he looked at the headlines, but did not read the articles. Both jurors assured the trial judge they could give the parties a fair and impartial trial and they had formed no opinion on the case.

We find the court protected the rights of the appellants sufficiently and did not abuse his discretion in denying the motions.

Second, regarding the alleged prejudicial comments by the homeowners' attorney, "a motion for a mistrial, because of something occurring during the trial, is one addressed to the sound discretion of the trial judge. . . ." *Keller v. Pearce-Young-Angel Co.*, 253 S. C. 395, 171 S. E. (2d) 352, 354 (1969).

The homeowners' attorney, on cross-examination, questioned a witness for the appellants about his testifying in previous cases for the appellants. Upon motion for a mistrial, the court denied the motion, but refused to allow the homeowners' attorney to ask any questions regarding any specific previous cases in which the witness had testified. We find no abuse of discretion in the trial court's action.

Affirmed.

SANDERS, C. J., and BELL, J., concur.