725 S.E.2d 112

MAGNOLIA NORTH PROPERTY OWNERS'
ASSOCIATION, INC., Respondent,

v.

HERITAGE COMMUNITIES, INC., Heritage Magnolia North,
Inc., and BuildStar Corporation, Appellants.

No. 4943.

Court of Appeals of South Carolina.

Heard Dec. 5, 2011.
Decided Feb. 15, 2012.
Rehearing Denied April 20, 2012.

354

C. Mitchell Brown and A. Mattison Bogan, of Columbia; Stephen L. Brown and Jeffrey J. Wiseman, of Charleston, for Appellants.

John P. Henry and Philip C. Thompson, of Conway, for Respondent.

GEATHERS, J.

Appellants, Heritage Communities, Inc. (HCI), Heritage Magnolia North, Inc. (HMNI), and BuildStar Corporation (BuildStar) (collectively, Appellants), seek review of the jury's verdict in this construction defect action.[1] Appellants assign error to the trial court's: (1) finding of an amalgamation of Appellants' corporate interests, entities, and activities so as to blur the legal distinction between the corporations and their activities; (2) admitting evidence of construction defects at other HCI projects; (3) instructing the jury regarding actual and punitive damages; (4) granting of a directed verdict for Respondent Magnolia North Property Owners' Association, Inc. (the POA) on its claims for negligence and breach of the warranty of workmanlike services; (5) denying Appellants' motions for a directed verdict and a judgment notwithstanding the verdict (JNOV); and (6) upholding the jury's punitive damages award. We affirm.

## FACTS/PROCEDURAL HISTORY

Construction on Magnolia North, a condominium complex in Horry County, began in 1998; as of March 2000, HCI had sold 41 or more units.[2] On January 29, 2001, HCI filed for protection under Chapter 11 of the United States Bankruptcy Code. Twenty-one buildings, each with 12, 13, or 15 units, had been completed by the time HCI turned over control of the POA to the unit owners on September 9, 2002. At this time, some of the development's roads, as well as four buildings and four pools, were incomplete. Another developer completed the construction of the four buildings, and the POA completed the construction of the roads and pools.

---

1. This court recently issued an opinion in a similar action against Heritage Communities, Inc. and BuildStar Corporation brought by the property owners' association at the Riverwalk development in Myrtle Beach. *See Pope v. Heritage Cmtys., Inc.,* 395 S.C. 404, 717 S.E.2d 765 (Ct.App.2011).

2. HCI was the parent corporation of both HMNI (the seller) and BuildStar (the general contractor responsible for supervising all construction). Prior to the construction, HCI and BuildStar developed numerous other properties in Horry County, South Carolina.

On May 28, 2003, the POA filed this action against Appellants alleging defects in the construction of Magnolia North. The POA's eighth Amended Complaint included the following causes of action: (1) negligence; (2) breach of express warranty; (3) breach of the warranty of workmanlike services against BuildStar; and (4) breach of fiduciary duty against HCI and HMNI.

The case went to trial on May 11, 2009.[3] After the close of the POA's evidence, the trial court directed a verdict for HCI on the express warranty cause of action. At the close of all evidence, the trial court granted the POA's motions for a directed verdict as to liability on the causes of action for negligence and breach of the warranty of workmanlike services. The jury returned a verdict in favor of the POA for $6.5 million in actual damages and $2 million in punitive damages.

On May 29, 2009, Appellants filed the following post-trial motions: (1) motion for a new trial based on the thirteenth juror doctrine; (2) motion for a JNOV; (3) motion for a new trial absolute; (4) motion for a new trial nisi remittitur; and (5) motion to set aside the punitive damages verdict. This appeal followed.

## ISSUES ON APPEAL

I. Did the trial court err in ruling that Appellants' entities were amalgamated?

II. Did the trial court err in admitting evidence of construction defects at other Heritage projects?

III. Did the trial court err in instructing the jury (1) it must award the POA damages proximately caused by the negligent construction, and (2) if it found the POA entitled to recover punitive damages, it would have a duty to include such damages in its verdict?

IV. Did the trial court err in granting a directed verdict for the POA on its causes of action for negligence and breach of the warranty of workmanlike services?

---

3. Prior to trial, HCI went out of business.

V. Did the trial court err in denying Appellants' motions for a directed verdict and JNOV?

VI. Did the trial court err in upholding the jury's punitive damages award?

## STANDARD OF REVIEW

■ "The standard of review for an appeal of an action at law tried by a jury is restricted to corrections of errors of law." *Felder v. K–Mart Corp.*, 297 S.C. 446, 448, 377 S.E.2d 332, 333 (1989). A factual finding of the jury will not be disturbed unless there is no evidence which reasonably supports the finding. *Id.*

## LAW/ANALYSIS

I. *Amalgamation*

■ Appellants maintain the trial court erred in ruling that their entities were amalgamated because (1) a court cannot disregard the corporate form when the requirements for "piercing the corporate veil" have not been met, and (2) the concept of amalgamation does not apply to the facts of this case. We disagree.

In *Kincaid v. Landing Development Corp.*, 289 S.C. 89, 91, 344 S.E.2d 869, 871 (Ct.App.1986), three related corporations (a development corporation, a management corporation, and a construction corporation) were sued for negligent construction and breach of warranty. The management corporation argued the court should have directed a verdict in its favor because it was merely the marketing and sales company. *Id.* at 96, 344 S.E.2d at 874. In addition to sharing owners, the three companies shared a location. *Id.* Furthermore, the management company was the entity called to remedy problems. *Id.* Finally, the company's letterhead identified the management company as, "A Development, Construction, Sales, and Property Management Company." *Id.* This court affirmed the trial court's finding that the evidence revealed "an amalgamation of corporate interests, entities, and activities so as to blur the legal distinction between the corporations and their activities." *Id.* (quoting the trial court); *see Mid–South Mgmt. Co. v. Sherwood Dev. Corp.*, 374 S.C. 588, 597–605, 649 S.E.2d 135, 140–44 (Ct.App.2007) (discussing *Kincaid* as one of three theories raised for holding a parent corpora-

tion liable in place of a subsidiary; i.e.: (1) piercing the corporate veil; (2) alter-ego or instrumentality theory; and (3) the amalgamation of interests or blurred identity theory).

Here, the trial court concluded that the facts of the instant case closely paralleled the facts in *Kincaid.* The trial court further concluded that the piercing of the corporate veil analysis did not apply to this case. The trial court stated: "The evidence has revealed an amalgamation of the corporate interest, the entities, and activities so as to blur the legal distinction between the corporation[s] and their activities."

The evidence supports the trial court's ruling. Gwyn Hardister, chief operating officer and president of HCI, testified HCI was the parent corporation of HMNI and BuildStar. The other officers of HCI were Roger Van Wie and Jack Green. Van Wie also oversaw BuildStar, the general contractor supervising the construction at Magnolia North. Separate corporations were created for each HCI development for the purpose of operating as "cost centers," thereby containing each development's expenses and oversight as it applied to property management and construction cost allocation.[4] All of these corporations shared officers, directors, office space, and a phone number with HCI. HMNI, the corporation HCI created to operate as a cost center for Magnolia North, created the POA; its officers were also officers for HCI. HCI officers controlled the POA until September 9, 2002, when the unit owners were given control of the POA.

Hardister testified it could be assumed that the employees of BuildStar were also the employees of HCI. At the first annual meeting of the POA, Van Wie acknowledged construction problems and represented that the problems would be corrected. Moreover, the warranty manual distributed to the unit owners upon purchase was entitled: "Heritage Communities, Inc. Limited Warranty Manual," and it identified HCI as the corporation extending the warranty.

Therefore, as in *Kincaid,*[5] this case involves several indicia of an amalgamation of interests between HCI, HMNI, and

---

4. HCI developments included Magnolia Place, Riverwalk, The Gardens, Azalea Lakes, Avian Forest, and Magnolia North.

5. This court reached the same conclusion in *Pope v. Heritage Communities, Inc.,* 395 S.C. 404, 717 S.E.2d 765 (Ct.App.2011).

BuildStar. The corporations shared a location, telephone number, board members, officers, and employees. In its warranty, HCI held itself out to the homeowners as the corporation responsible for construction defects. In light of these indicia, the trial court's ruling that Appellants' entities were amalgamated is supported by the law and the evidence.

## II. *Other Heritage Projects*

Appellants assert that this court should order a new trial because the trial court allowed the POA to repeatedly present evidence of construction defects at other Heritage projects. Appellants argue that the admission of this evidence violated Rule 404 of the South Carolina Rules of Evidence as well as the limitation on admission of similar events evidence set forth in *Whaley v. CSX Transportation, Inc.*, 362 S.C. 456, 483, 609 S.E.2d 286, 300 (2005). We disagree.

Rule 404(b), SCRE states: "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." Rule 404(b), SCRE. In *Whaley,* our supreme court recognized that similar acts are admissible if they tend to prove or disprove some fact in dispute. *See Branham v. Ford Motor Co.*, 390 S.C. 203, 230, 701 S.E.2d 5, 19 (2010) (discussing *Whaley* ). Evidence of similar acts has the potential to be exceedingly prejudicial. *Branham,* 390 S.C. at 230, 701 S.E.2d at 19. Accordingly, a plaintiff must present facts showing the other acts were substantially similar to the event at issue. *Whaley,* 362 S.C. at 483, 609 S.E.2d at 300. Further, other acts may be admissible for the purpose of establishing the facts necessary to prove entitlement to punitive damages. *Judy v. Judy,* 384 S.C. 634, 642–43, 682 S.E.2d 836, 840–41 (Ct.App.2009), *aff'd on other grounds,* 393 S.C. 160, 712 S.E.2d 408 (2011) (affirming when the trial court admitted evidence of a similar prior lawsuit). The admission of evidence is within the trial court's discretion, and the trial court's decision will not be reversed on appeal absent an abuse of discretion. *Whaley,* 362 S.C. at 483, 609 S.E.2d at 300 (applying the abuse of discretion standard of review to the admissibility of evidence of similar accidents).

■ In the present case, Gwyn Hardister, HCI's chief operating officer and president, testified that after his first month of employment with HCI, it became apparent that Magnolia Place had issues with water intrusion, including window leaks, and water issues on the decks and breezeways, before construction had begun at Magnolia North. Hardister admitted that the construction defects were virtually identical across all developments. Other testimony setting forth the details of defects in projects other than Magnolia North supports Hardister's admission. Drew Brown, the POA's expert in general contracting, estimating, and building diagnostics, testified that he investigated other HCI projects that used the engineered wood trim, just as Magnolia North did, and that the trim was inherently defective as an exterior trim. He also stated that, as with Magnolia North, there was improper flashing and a lack of engineered sealant joints in the other projects. Additionally, three of the other projects used the same brand of windows as Magnolia North, and Brown tested several of these windows at the four projects. Brown indicated that he tested the windows in over 20 units, and they consistently failed to meet the water intrusion resistance requirement that the labeling had represented.

Brown also found sheathing damage beneath the windows and improper weight bearing of lintels at window heads in Magnolia Place and in other HCI projects.[6] Other defects common to Magnolia Place and the other projects were improper sloping on bricks, improper waterproofing, improper installation of trim products, and improper installation of brick veneer.

■■ Based on the foregoing, the construction defects at the other HCI developments were substantially similar to those experienced by Magnolia North. Further, the evidence is admissible to prove many of the elements required for a punitive damages award. *See Mitchell v. Fortis Ins. Co.*, 385 S.C. 570, 584–89, 686 S.E.2d 176, 183–86 (2009) (listing guideposts to consider in conducting a review of a punitive damages

---

6. A lintel is a horizontal architectural member spanning and usually carrying the load above an opening. *Merriam–Webster's Collegiate Dictionary* at 725 (11th ed.2003).

award) [7]; *Gamble v. Stevenson,* 305 S.C. 104, 111–12, 406 S.E.2d 350, 354 (1991) (listing factors to consider in conducting a review of punitive damages).[8] The evidence was relevant to the *Mitchell* element of the reprehensibility of the defendant's conduct and the *Gamble* elements of the duration of the conduct, Appellants' awareness, and similar past conduct. For example, HCI was aware of water issues in other projects as early as 1998, before construction on Magnolia North had begun.

In sum, the trial court did not abuse its discretion in admitting the challenged evidence.

## III. *Jury Instructions*

Appellants maintain they should receive a new trial because the trial court gave the jury two erroneous instructions regarding: (1) actual damages on the POA's negligence claim; and (2) punitive damages. We address each of these issues in turn.

### a. *Standard for Jury Instructions*

The trial court is required to charge only the current and correct law of South Carolina. *Clark v. Cantrell,* 339 S.C. 369, 389, 529 S.E.2d 528, 539 (2000). In reviewing

---

7. The *Mitchell* guideposts are: (1) the reprehensibility of the defendant's conduct; (2) the disparity between the actual or potential harm to the plaintiff and the amount of the punitive damage award; and (3) the difference between the punitive damages awarded by the jury and the civil penalties authorized or imposed in comparable cases. *Mitchell,* 385 S.C. at 584–89, 686 S.E.2d at 183–86. In *Mitchell,* our supreme court announced that its previous opinion in *Gamble* remained relevant to the post-judgment due process analysis only insofar as it added substance to the guideposts in *BMW of North America v. Gore,* 517 U.S. 559, 116 S.Ct. 1589, 134 L.Ed.2d 809 (1996) and adopted in *Mitchell.* The supreme court decided *Mitchell* on September 14, 2009, after the trial court had already conducted a punitive damages review in the present case.

8. The *Gamble* factors are: (1) defendant's degree of culpability; (2) duration of the conduct; (3) defendant's awareness or concealment; (4) existence of similar past conduct; (5) likelihood of deterring the defendant or others from similar conduct; (6) whether the award is reasonably related to the harm likely to result from such conduct; (7) defendant's ability to pay; and (8) other factors deemed appropriate. *Gamble,* 305 S.C. at 111–12, 406 S.E.2d at 354.

jury charges for error, this court must consider the trial court's jury charge as a whole in light of the evidence and issues presented at trial. *Welch v. Epstein,* 342 S.C. 279, 311, 536 S.E.2d 408, 425 (Ct.App.2000). If the charges are reasonably free from error, isolated portions that might be misleading do not constitute reversible error. *Keaton ex rel. Foster v. Greenville Hosp. Sys.,* 334 S.C. 488, 497–98, 514 S.E.2d 570, 575 (1999). A jury charge that is substantially correct and covers the law does not require reversal. *Id.* at 496, 514 S.E.2d at 574.

### b. *Actual Damages on Negligence Claim*

 Appellants maintain the trial court instructed the jury that it had granted a directed verdict to the POA on its negligence claim, and, therefore, the jury must award the POA damages on this claim. Appellants argue the trial court improperly gave the jury the impression it had already determined the POA had established proximate cause. We disagree with Appellants' interpretation of the trial court's jury instruction.

At the close of evidence, the trial court directed verdicts for the POA on their claims for negligence and breach of warranty of workmanlike services. As to the negligence claim, the trial court instructed the jury, in pertinent part:

Now I charge you that as a matter of law, I have determined that the defendants were negligent and breached the implied warranty of workmanlike services in the construction of these condominiums and as a result of [sic] you must award the plaintiff property owners['] association damages *proximately caused by* the negligent construction.

(emphasis added).

Appellants argue the trial court's inclusion of the phrase "proximately caused by the negligent construction" following its statement that the jury must award damages did not remedy the error. We disagree. The trial court's statement sufficiently qualified the requirement to award damages by describing the damages as those "proximately caused by the negligent construction." *See Stevens v. Allen,* 342 S.C. 47, 51, 536 S.E.2d 663, 665 (2000) (setting forth the prerequisites to an award of damages on a negligence claim).

Because the challenged jury instruction accurately reflected all elements required to be established for a damages award on the POA's negligence claim, the trial court did not commit error in giving its charge. *See Stewart v. Richland Mem'l Hosp.*, 350 S.C. 589, 595, 567 S.E.2d 510, 513 (Ct.App.2002) (stating a jury charge that is substantially correct does not require reversal).

### c. *Punitive Damages*

Appellants contend their due process rights were violated by the trial court's instruction advising the jury it had a duty to award punitive damages if it found the plaintiff entitled to such. Appellants argue it no longer is appropriate for South Carolina to require the imposition of punitive damages after the jury determines the plaintiff's entitlement because a judicial evaluation of a punitive damages award is required, pursuant to *State Farm Mutual Automobile Insurance Co. v. Campbell*, 538 U.S. 408, 123 S.Ct. 1513, 155 L.Ed.2d 585 (2003) and *Mitchell v. Fortis Insurance Co.*, 385 S.C. 570, 584–89, 686 S.E.2d 176, 183–86 (2009). We disagree.

Appellants challenge the following portion of the trial court's jury instruction on punitive damages:

*If you should find that the plaintiff is entitled to recover punitive damages in addition to actual damages,* it would be your duty to include such damages in your verdict and award such an amount as you may deem reasonable and proper in light of the facts and circumstances.

(emphasis added).

This court has previously held that in South Carolina, the award of punitive damages does not rest in the jury's discretion, but is recoverable as a matter of right. *Broom v. Se. Highway Contracting Co.*, 291 S.C. 93, 98, 352 S.E.2d 302, 305 (Ct.App.1986), *abrogated on other grounds, Davenport v. Cotton Hope Plantation Horizontal Prop. Regime*, 333 S.C. 71, 508 S.E.2d 565 (1998) (citing *Sample v. Gulf Ref. Co.*, 183 S.C. 399, 410, 191 S.E. 209, 214 (1937)). In *Sample,* our supreme court held there was no error in charging the jury that it would have a duty to award punitive damages if it found that the plaintiff's rights "had been consciously, willfully, and reck-

lessly violated." 183 S.C. at 410, 191 S.E. at 214. In that case, the court stated:

> [U]nder the settled rule prevailing in this state punitive damages are awarded not only as punishment for a wrong, but also as vindication of [a] private right, and *when* under proper allegations *a plaintiff proves a willful, wanton, reckless, or malicious violation of his rights,* it is not only the right but the duty of the jury to award punitive damages.

*Id.* at 410, 191 S.E. at 214 (emphasis added). Appellants argue *Broom* and *Sample* are no longer controlling in light of the concerns expressed in *Campbell* and *Mitchell.* We disagree.

 In *Campbell,* the United States Supreme Court acknowledged the existence of procedural and substantive constitutional limitations on punitive damages awards. 538 U.S. at 416, 123 S.Ct. 1513. It explained: "The Due Process Clause of the Fourteenth Amendment prohibits the imposition of grossly excessive or arbitrary punishments on a tortfeasor." *Id.* (citations omitted); *see also BMW of N. Am. v. Gore,* 517 U.S. 559, 568, 116 S.Ct. 1589, 134 L.Ed.2d 809 (1996) ("Only when an award can fairly be categorized as 'grossly excessive' in relation to these interests does it enter the zone of arbitrariness that violates the Due Process Clause of the Fourteenth Amendment."); *Pacific Mut. Life Ins. Co. v. Haslip,* 499 U.S. 1, 22, 111 S.Ct. 1032, 113 L.Ed.2d 1 (1991) (holding that the Alabama Supreme Court's post-verdict review ensured that punitive damage awards were not grossly out of proportion to the severity of the offense and had some understandable relationship to compensatory damages). In this context, *Campbell* primarily addressed the excessiveness of punitive damages awards, and it imposed limits on whether to include *any* punitive damages in a verdict only to the extent that the conduct on which the award is based does not have a nexus to the plaintiff's harm or is not sufficiently reprehensible to justify such an award. *Id.* at 419, 422–23, 123 S.Ct. 1513. Otherwise, states retain discretion over the imposition of punitive damages. *Id.* at 416, 123 S.Ct. 1513 ("While States possess discretion over the imposition of punitive damages, it is well established that there are procedural and substantive constitutional limitations on these awards. The Due Process

Clause of the Fourteenth Amendment prohibits the imposition of grossly excessive or arbitrary punishments on a tortfeasor.") (citations omitted).

In *Mitchell*, our state supreme court implemented the constitutional limitations set forth in *Campbell*, *Gore*, and *Haslip*. The *Mitchell* opinion confirmed that *Gore* and *Haslip* addressed the excessiveness of punitive damages awards and that *Campbell* prohibited any punitive damages award for conduct unrelated to the plaintiff's harm or conduct that was insufficiently reprehensible. 385 S.C. at 584–86, 686 S.E.2d at 183–84. Further, in *Campbell*, the United States Supreme Court stated:

[P]unitive damages should only be awarded if the defendant's culpability, after having paid compensatory damages, is so reprehensible as to warrant the imposition of further sanctions to achieve punishment or deterrence.

*Campbell*, 538 U.S. at 419, 123 S.Ct. 1513. This language dovetails with *Sample*'s requirement that "*when* . . . a plaintiff proves a willful, wanton, reckless, or malicious violation of his rights, it is not only the right but the duty of the jury to award punitive damages." 183 S.C. at 410, 191 S.E. at 214 (emphasis added).

In other words, only after the jury has evaluated the evidence and concluded the plaintiff is entitled to punitive damages does it become the jury's "duty" to impose such damages on the defendant. This is precisely what the trial court in the present case instructed: "If you should find that the plaintiff is entitled to recover punitive damages in addition to actual damages, it would be your duty to include such damages in your verdict and award such an amount as you may deem reasonable and proper in light of the facts and circumstances." This instruction communicated to the jury that it had the discretion to determine the POA's entitlement to punitive damages; and, if entitlement were so determined, the duty to award punitive damages.

Appellants argue that *Haslip* prohibits states from requiring the imposition of punitive damages. We do not interpret *Haslip* as Appellants suggest. First, in *Haslip*, the issue of whether states may require the imposition of punitive damages was not squarely before the Court. Rather, the Court in

*Haslip* analyzed the adequacy of Alabama's method for assessing punitive damage awards, which included a jury instruction explaining the nature, purpose, and basis for the award; a post-trial review enabling the trial court to scrutinize the award; and an appellate review process ensuring that the award was reasonable and rational. 499 U.S. at 19–23, 111 S.Ct. 1032. Rather than expressing a need to increase the jury's discretion in the imposition of punitive damages, the *Haslip* opinion expressed a need to limit the jury's discretion:

> To be sure, the instructions gave the jury significant discretion in its determination of punitive damages. But that discretion was not unlimited. It was confined to deterrence and retribution, the state policy concerns sought to be advanced. *And if punitive damages were to be awarded, the jury "must take into consideration the character and the degree of the wrong as shown by the evidence and necessity of preventing similar wrong."* The instructions thus enlightened the jury as to the punitive damages' nature and purpose, identified the damages as punishment for civil wrongdoing of the kind involved, and *explained that their imposition was not compulsory.*
>
> . . .
>
> *As long as the discretion is exercised within reasonable constraints, due process is satisfied.*

*Id.* at 19, 111 S.Ct. 1032 (citations omitted) (emphasis added). Thus, Appellants' interpretation of *Haslip* is unfounded. The Court did not prohibit states from requiring the jury to impose punitive damages after evaluating the evidence and determining the plaintiff's entitlement.

 In *Campbell,* which post-dates *Haslip,* the United States Supreme Court clearly recognized the discretion of the state to establish policies on punitive damages, within the constitutional limits of excessiveness and arbitrariness. *Campbell,* 538 U.S. at 416, 123 S.Ct. 1513. South Carolina imposes a duty on the jury to award punitive damages only after it determines the plaintiff is entitled to such an award based on its characterization of the conduct harming the plaintiff as willful, wanton, malicious, or reckless. Therefore, the dictum in *Haslip,* on which Appellants rely, cannot justify a departure from South Carolina precedent on the jury's duty

to award punitive damages upon the determination of entitlement. *See Clark v. Cantrell,* 339 S.C. 369, 390, 529 S.E.2d 528, 539 (2000) ("[T]he trial court is required to charge only the current and correct law of South Carolina.").

Based on the foregoing, the trial court's punitive damages instruction as a whole falls within the limits of due process and does not constitute reversible error.

## IV. *Directed Verdict*

■ Appellants assert the trial court should not have directed a verdict for the POA on its claims for negligence and breach of warranty of workmanlike services. Appellants argue the trial court misconstrued counsel's acknowledgment that defects existed as an admission that Appellants were "negligent as to, and were the proximate cause of, *all* of the alleged defects." Appellants further argue: (1) the factual issues as to whether certain defective conditions existed, and the extent of such defects, should have been left for the jury to decide; and (2) these factual issues go to the question of liability. We disagree.

In ruling on motions for directed verdict, the trial court must view the evidence and the inferences reasonably drawn therefrom in the light most favorable to the party opposing the motions. *Law v. S.C. Dep't of Corr.,* 368 S.C. 424, 434, 629 S.E.2d 642, 648 (2006). The trial court should deny the motions when either the evidence yields more than one inference or its inference is in doubt. *McMillan v. Oconee Mem'l Hosp., Inc.,* 367 S.C. 559, 564, 626 S.E.2d 884, 886 (2006). "However, this rule does not authorize submission of speculative, theoretical, and hypothetical views to the jury." *Proctor v. Dep't of Health & Envtl. Control,* 368 S.C. 279, 292–93, 628 S.E.2d 496, 503 (Ct.App.2006).

■ In order to establish a claim for negligence, a plaintiff must show: (1) the defendant owes a duty of care to the plaintiff; (2) the defendant breached the duty by a negligent act or omission; (3) the defendant's breach was the actual and proximate cause of the plaintiff's injury; and (4) the plaintiff suffered an injury or damages. *Doe v. Marion,* 373 S.C. 390, 400, 645 S.E.2d 245, 250 (2007). Further, to establish a claim for breach of the implied warranty of workmanlike services,

the plaintiff must show that the builder failed to perform its work in a careful, diligent, and workmanlike manner. *Smith v. Breedlove*, 377 S.C. 415, 422, 661 S.E.2d 67, 71 (2008) (holding that a builder who contracts to construct a dwelling impliedly warrants that the work undertaken will be performed in a careful, diligent, and workmanlike manner).

Here, there was overwhelming evidence of Appellants' failure to meet the industry standard of care in several aspects. Viewing the trial in its entirety, Appellants merely contested the extent of damages. The POA's and Appellants' experts testified to conflicting estimates of the extent of the damages. The reports differed primarily in the scope of work necessary to repair the defects and the cost of the repairs. Gwyn Hardister, HCI's chief operating officer and president, also acknowledged the construction problems.

Further, during opening arguments, Appellants' counsel conceded liability. As to Appellants' argument that their counsel acknowledged only some, and not all, of the alleged defects, the existence and extent of specific defects bear on the issue of damages proximately caused by Appellants' negligence. An admission of counsel or evidence supporting less than all of the complaint's specifications of negligent conduct is sufficient to support a directed verdict for the POA. *Cf. Deason v. Southern Ry. Co.*, 142 S.C. 328, 336, 140 S.E. 575, 577 (1927) ("The Code requires the construction of pleadings in aid of substantial justice, and it is the rule that the proof of *one* specification of negligence and wantonness will entitle plaintiff to a verdict, if the jury sees that a case has been made out."). Appellants claim that our supreme court's opinion in *Guffey v. Columbia/Colleton Reg'l Hosp., Inc.*, 364 S.C. 158, 612 S.E.2d 695 (2005), requires an evidentiary showing or admission that the defendant was negligent as to each and every specification in the complaint before the trial court may direct a verdict for the plaintiff as to the defendant's breach of the duty of due care. We find Appellants' assertion misapprehends the *Guffey* opinion.

In *Guffey*, our supreme court held: "A directed verdict should be granted where the evidence raises no issue for the jury as to the defendant's liability. On review, we will affirm a directed verdict [for the defendant] where there is no

evidence on any one *element of the alleged cause of action.*" 364 S.C. at 163, 612 S.E.2d at 697 (citation omitted) (emphasis added). The court was referring to the required showing of duty, breach, causation, and damages to establish a cause of action for negligence. The court further held the trial judge properly granted a directed verdict for the defendant on one of the complaint's specifications of negligence, i.e., that a hospital was negligent in giving aftercare instructions that conflicted with the emergency room physician's instructions, because there was no evidence the conflicting instructions *proximately caused* the decedent's death. 364 S.C. at 164, 612 S.E.2d at 697.

 Appellants also argue the trial court erred in granting a directed verdict on the claims for negligence and breach of warranty of workmanlike services because BuildStar, as the general contractor, was not responsible for the work performed by its subcontractors. This argument has no merit. Although a general contractor is not automatically responsible for the negligence of a subcontractor, a builder who undertakes to supervise the construction of a building has a duty to exercise reasonable care. *See Fields v. J. Haynes Waters Builders, Inc.,* 376 S.C. 545, 561, 658 S.E.2d 80, 88–89 (2008) (rejecting the argument that a general contractor is automatically responsible for the negligence of a subcontractor, but approving jury instructions that included the law imposing a duty on a general contractor to use due care in supervising a subcontractor).

Based on the foregoing, the trial court properly directed a verdict for the POA on its causes of action for negligence and breach of warranty of workmanlike services.

## V. *Appellants' Directed Verdict Motion*

Appellants contend the trial court erred in denying their motions for a directed verdict and JNOV on all of the POA's causes of action. Appellants argue: (1) they were not equitably estopped from asserting the statute of limitations as a defense; and (2) the POA failed to establish damages as to its claims. Appellants also contend the trial court erred in denying their directed verdict and JNOV motions as to negligence and punitive damages because the POA failed to establish: (1)

each Appellant violated its respective standard of care; and (2) punitive damages by clear and convincing evidence as to each Appellant. We disagree.

When reviewing the denial of a motion for directed verdict or JNOV, the appellate court applies the same standard as the trial court. *Elam v. S.C. Dep't of Transp.*, 361 S.C. 9, 27–28, 602 S.E.2d 772, 782 (2004). The court is required to view the evidence and inferences that reasonably can be drawn therefrom in the light most favorable to the non-moving party. *Sabb v. S.C. State Univ.*, 350 S.C. 416, 427, 567 S.E.2d 231, 236 (2002). An appellate court will only reverse the trial court's ruling when no evidence supports the ruling or when the ruling is controlled by an error of law. *Steinke v. S.C. Dep't of Labor, Licensing & Regulation*, 336 S.C. 373, 386, 520 S.E.2d 142, 148 (1999).

In the instant matter, the trial court held

I find that equitable tolling applies and that based on when the suit was filed and the property turned over to the homeowners['] association that the, the defense is estopped from raising the statute of limitations defense. . . .

We address the theories of equitable tolling and equitable estoppel in turn.

a. *Equitable Tolling*

The POA's claims are governed by a three-year statute of limitations. *See* S.C.Code Ann. § 15–3–530 (2005) (establishing three years as the limitation for filing an action on a contract, obligation, or liability, except those provided for in section 15–3–520). Appellants maintain that the statute began to run on March 8, 2000, the date of the POA's first meeting. Thus, they argue, the statute expired prior to the filing of this action on May 28, 2003. We agree with the trial court's ruling that equitable tolling is justified in this case.

In *Hooper v. Ebenezer Senior Services and Rehabilitation Center*, our supreme court stated:

Equitable tolling is judicially created; it stems from the judiciary's inherent power to formulate rules of procedure where justice demands it. Where a statute sets a limitation period for action, courts have invoked the equitable tolling

doctrine to suspend or extend the statutory period to ensure fundamental practicality and fairness.

The party claiming the statute of limitations should be tolled bears the burden of establishing sufficient facts to justify its use.

It has been observed that equitable tolling typically applies in cases where a litigant was prevented from filing suit because of an extraordinary event beyond his or her control.

. . .

The equitable power of a court is not bound by cast-iron rules but exists to do fairness and is flexible and adaptable to particular exigencies so that *relief will be granted when,* in view of all the circumstances, *to deny it would permit one party to suffer a gross wrong at the hands of the other.* Equitable tolling may be applied where it is justified under all the circumstances.

386 S.C. 108, 115–17, 687 S.E.2d 29, 32–33 (2009) (citations and quotation marks omitted) (emphasis added). Unlike equitable estoppel, equitable tolling does not require a showing that the defendant has made a misrepresentation to the plaintiff. *See Hooper,* 386 S.C. at 115, 687 S.E.2d at 32 ("Equitable tolling is judicially created; it stems from the judiciary's inherent power to formulate rules of procedure where justice demands it.").

In the present case, the POA board consisted of Appellants' officers until the date of "turnover," September 9, 2002. We find unpersuasive Appellants' claim that an organization they controlled would have initiated an action against itself during this period. Further, after the property owners gained control over the POA, they exercised due diligence by filing this action on May 28, 2003, approximately eight months after assuming control. Therefore, we affirm the trial court's ruling on this issue.

b. *Equitable Estoppel*

 The law on equitable estoppel also supports the trial court's ruling. In South Carolina,

[a] defendant will be estopped to assert the statute of limitations in bar of a plaintiff's claim when the delay that otherwise would give operation to the statute has been *induced by the defendant's conduct.*

The doctrine is, of course, most clearly applicable where the aggrieved party's delay in bringing suit was caused by his opponent's *intentional* misrepresentation; *but deceit is not an essential element of estoppel.* It is sufficient that the aggrieved party *reasonably relied* on the words and conduct of the person to be estopped in allowing the limitations period to expire.

The conduct may involve either inducing the plaintiff to believe that an amicable adjustment of the claim will be made without suit or inducing the plaintiff in some other way to forbear exercising his right to sue. Some courts hold that repairs by a defendant may toll the statute of limitations. One's assurances to an injured party that defects can be corrected coupled with his attempts to correct them is conduct that may lead the injured party to *reasonably believe that it will receive satisfaction without resort to litigation.*

*Dillon Cnty. Sch. Dist. No. Two v. Lewis Sheet Metal Works, Inc.*, 286 S.C. 207, 218–19, 332 S.E.2d 555, 561 (Ct.App.1985), *overruled on other grounds, Atlas Food Sys. & Serv., Inc. v. Crane Nat'l Vendors Div. of Unidynamics Corp.*, 319 S.C. 556, 462 S.E.2d 858 (1995) (citations and quotation marks omitted) (emphasis added).

Here, until the turnover, Appellants assured the unit owners the construction defects would be repaired, and, as a result, the owners were justified in relying on those assurances. At the time these representations were made, a reasonable owner could have believed that it would be counterproductive to file suit before giving Appellants the opportunity to honor the representations, especially given Appellants' efforts to make some repairs. Therefore, the trial court properly held that Appellants were equitably estopped from asserting the statute of limitations as a defense.

c. *Statute of Limitations as to Breach of Fiduciary Duty*

 Appellants argue that the trial court erred in its conclusions regarding equitable tolling and equitable estoppel, and, as a result, the trial court should have granted Appellants' motion for a directed verdict on the ground of the statute of limitations. However, the POA asserts that, even if

neither equitable tolling nor equitable estoppel apply to this case, the statute of limitations did not begin to run on the breach of fiduciary duty claim until HCI turned over its control of the POA to the owners on September 9, 2002, because this was the date that the breach occurred. We agree.

In *Concerned Dunes West Residents, Inc. v. Georgia–Pacific Corp.*, our supreme court held:

> [T]he developer has a fiduciary duty to the POA to transfer common areas that are in good repair; if the developer transfers substandard common areas, the developer must, *at the time of transfer*, provide the POA with the funds necessary to bring the common areas up to a standard of reasonably good repair. The developer who breaches this duty, by transferring common areas that are not in reasonably good repair and without the funds necessary to bring the common areas up to standard, is liable to the POA for all damages proximately flowing from the breach, including damages for the continued deterioration of these areas.

349 S.C. 251, 260, 562 S.E.2d 633, 638 (2002) (emphasis added). Therefore, in the present case, the breach occurred on September 9, 2002, the date HCI turned over control of the POA to the unit owners. Because the POA filed its breach of fiduciary duty claim approximately eight months later, the three-year statute of limitations had not yet expired. *See* S.C.Code Ann. § 15–3–530 (2005) (establishing three years as the limitation for filing an action on a contract, obligation, or liability, except those provided for in section 15–3–520).

d. *Damages*

 Appellants also assert the POA failed to establish its damages as to any of its claims. We disagree.

 To recover damages, the evidence must enable the jury to determine the amount of damages with reasonable certainty or accuracy. *Whisenant v. James Island Corp.*, 277 S.C. 10, 13, 281 S.E.2d 794, 796 (1981). However, "proof with mathematical certainty of the amount of loss or damage is not required." *Id.* The determination of damages may depend to some extent on the consideration of contingent events if a reasonable basis of computation is provided, allowing a reason-

ably close estimate of the loss. *Piggy Park Enter., Inc. v. Schofield,* 251 S.C. 385, 391–92, 162 S.E.2d 705, 708 (1968).

Here, the POA's expert in building diagnostics testified that in his investigation of buildings, he often finds hidden damages. He also testified that it is common for buildings like those at Magnolia North to look great on the outside, but to reveal rot "when you peel the onion[.]" Further, the POA's expert in estimating construction repair testified that usually, hidden damage in condominium projects is approximately twenty percent of the contract price, and he had included a hidden damage allowance in his estimate to repair Magnolia North.[9] This evidence provides a sufficiently reasonable basis of computation of damages to support the trial court's submission of damages to the jury. *See May v. Hopkinson,* 289 S.C. 549, 559, 347 S.E.2d 508, 514 (Ct.App.1986) (affirming the award of damages based on the contractor's repair estimate even though the exact repairs needed could not be determined because the removal of defective wood was expected to reveal additional problems).

▆▆▆▆▆ Appellants also argue that as to the breach of fiduciary duty claim, the POA failed to offer evidence of its damages at the time of the transfer of control. In response, the POA contends the construction defects in question existed at the time of the transfer of control. We agree with the POA that the evidence of construction defects, combined with Prime South's estimate for repair costs, was sufficient to allow the jury to determine the resulting damages from Appellants' breach of fiduciary duty.

[T]he developer has a fiduciary duty to the POA to transfer common areas that are in good repair; if the developer

---

9. Appellants argue this expert's estimate of hidden damage was speculative because his past experience in assessing hidden damage included some buildings with stucco siding, while Magnolia North's buildings had Hardie Plank siding above a brick veneer. However, the fact that this expert's past experience with assessing hidden damages included buildings with stucco siding would go to the weight of the evidence rather than its existence. *Cf. Dep't of Transp. v. Rogers,* 44 N.C.App. 56, 259 S.E.2d 775 (1979) (holding that there was no error in admitting into evidence the testimony of the defendant's expert regarding the value of the defendant's condemned property because the fact that the expert had not observed the property at the time of the taking went to the weight given his testimony by the jury).

transfers substandard common areas, the developer must, at the time of transfer, provide the POA with the funds necessary to bring the common areas up to a standard of reasonably good repair. The developer who breaches this duty, by transferring common areas that are not in reasonably good repair and without the funds necessary to bring the common areas up to standard, is liable to the POA for all damages proximately flowing from the breach, *including damages for the continued deterioration of these areas.* *Concerned Dunes West Residents, Inc. v. Georgia–Pacific Corp.*, 349 S.C. 251, 260, 562 S.E.2d 633, 638 (2002) (emphasis added). Therefore, Prime South's estimate for repair costs properly included the current cost to repair the construction defects.

Appellants further maintain that general maintenance items were improperly included in the damages total, citing Jennifer Harmon's testimony regarding the amount the POA spent on repairs after the turnover of control to the unit owners.[10] However, any mistaken inclusion of general maintenance items in Harmon's repair records does not detract from the strength of other evidence of damages. Chris Cooper estimated the total cost of repairs, not including an owners' contingency or contract administration fee, as $7,793,468. After the owners' contingency and contract administration fee were added, the total contract price was $9,310,902. *Id.* The POA also sought reimbursement for the total amount it had to spend on repairs since the transfer of control from Appellants to the unit owners. Jennifer Harmon testified this amount was over $500,000. However, the jury awarded the POA only $6,500,000 in actual damages. Thus, even if Harmon's repair records included some general maintenance items, there was sufficient evidence of other damages to support the $6.5 million award for actual damages.

Based on the foregoing, the trial court properly denied Appellants' directed verdict and JNOV motions.[11]

---

10. Jennifer Harmon worked for the Noble Company, which managed the Magnolia North property for the POA.

11. Appellants also argue (1) the POA failed to establish that each Appellant violated its respective standard of care, and (2) the jury's award of punitive damages was not based on individualized determina-

## VI. *Punitive Damages Award*

Finally, Appellants contend the admission of evidence of defects at HCI projects other than Magnolia North violated their due process rights because it resulted in the imposition of punitive damages based on alleged harm to non-parties to this litigation. Appellants also argue the punitive damages award was inconsistent with the guidelines established in *Gamble v. Stevenson*, 305 S.C. 104, 406 S.E.2d 350 (1991), and *Mitchell v. Fortis Insurance Co.*, 385 S.C. 570, 584–89, 686 S.E.2d 176, 183–86 (2009).[12]

### a. *Non-parties*

Appellants contend the admission of evidence of defects at HCI projects other than Magnolia North violated their due process rights because it resulted in the imposition of punitive damages based on alleged harm to non-parties to this litigation. We need not address this issue because we have previously determined the trial court properly admitted evidence of defects at other HCI developments.[13] *See Futch v. McAllister Towing of Georgetown, Inc.*, 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) (stating an appellate court need not address an issue when a decision on a prior issue is dispositive).

### b. *Gamble/Mitchell factors*

 Appellants maintain that the *Gamble* and *Mitchell* factors require the award in this case to be set aside. In

---

tions that clear and convincing evidence supported such damages against each Appellant. Because the trial court did not err in finding Appellants' entities were amalgamated, it is unnecessary to address this issue. *See Futch v. McAllister Towing of Georgetown, Inc.*, 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) (stating an appellate court need not address an issue when a decision on a prior issue is dispositive).

12. *See supra* n. 7 & n. 8.

13. As stated earlier in this opinion, the evidence of other HCI projects was relevant to the *Gamble* elements of the duration of the conduct, Appellants' awareness, and similar past conduct. For example, HCI was aware of water issues in other projects as early as 1998, before construction on Magnolia North had begun.

particular, Appellants argue (1) the award of punitive damages has no deterrent effect because Appellants went out of business prior to the commencement of this litigation, and (2) Appellants have no ability to pay punitive damages.

Assuming, arguendo, the lack of a deterrent effect on Appellants, neither this consideration nor the absence of evidence of Appellants' ability to pay punitive damages precludes such an award if the trial court's findings on other relevant factors are sufficient to uphold the award. *See Miller v. City of W. Columbia*, 322 S.C. 224, 231–32, 471 S.E.2d 683, 687–88 (1996) (rejecting Appellant's argument that the trial court erred in failing to strike the punitive damages award because the record did not establish that he had an ability to pay and holding the trial court was not required to make specific findings of fact for each *Gamble* factor); *id.* at 232, 471 S.E.2d at 687 ("[E]ven if the record did not establish that [Appellant] ... had an ability to pay, the judge's findings on the remaining factors are sufficient to uphold the jury's award of punitive damages."). Here, the trial court conducted a post-trial review of the punitive damages award using the factors outlined in *Gamble* and *Mitchell* and properly set forth its findings on the record. Considering the factors in both *Gamble* and *Mitchell*, the evidence supports the trial court's post-trial review of the punitive damages award.

Based on the foregoing, the trial court properly upheld the jury's punitive damages award.

## CONCLUSION

Accordingly, the jury's verdict is

**AFFIRMED.**

SHORT and WILLIAMS, JJ., concur.