<u>**UNPUBLISHED**</u>

**UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT**

---

**No. 13-1402**

---

ORLANDO RESIDENCE, LTD.,

        Plaintiff – Appellee,

    and

FIRST REAL ESTATE DEVELOPMENT CORPORATION; RESOLUTION TRUST CORPORATION, as Receiver for Citadel Federal Savings and Loan,

        Plaintiffs,

    v.

KENNETH E. NELSON,

        Defendant – Appellant,

    and

HILTON HEAD HOTEL INVESTORS; WALLACE H. HUSTAD; MITCHELL A. ANDERSON; ALBERICI/DENVER; CLELAND CONSTRUCTION COMPANY; PARRISH PLUMBING COMPANY; BAILEY SPECIALITIES; B&B CONTRACTING COMPANY; CROSS COUNTRY CABINET & MILLWORK; NOLAND COMPANY; GRINNELL CORPORATION; EASTERN TECHNOLOGIES; GRAYBAR ELECTRIC COMPANY; HOWARD B. JONES & SONS; CAPITOL MATERIALS; DOVER ELECTRIC COMPANY; MCCONNELL & ASSOCIATES; CAMERON & BARKLEY COMPANY; SOUTH CAROLINA TAX COMMISSION,

        Defendants,

    and

SANWA BUSINESS CREDIT CORPORATION,

        Defendant and Third-Party Plaintiff,

    v.

RUTH HUSTAD,

Third Party Defendant.

---

Appeal from the United States District Court for the District of South Carolina, at Beaufort. David C. Norton, District Judge. (9:89-cv-00662-DCN)

---

Argued: January 28, 2014                    Decided: April 7, 2014

---

Before DUNCAN and FLOYD, Circuit Judges, and DAVIS, Senior Circuit Judge.

---

Affirmed by unpublished opinion. Senior Judge Davis wrote the opinion, in which Judge Duncan joined. Judge Floyd wrote a separate opinion dissenting in part.

---

**ARGUED**: Gary Andrew Ahrens, MICHAEL, BEST & FRIEDRICH LLP, Milwaukee, Wisconsin, for Appellant. Eugene N. Bulso, Jr., LEADER, BULSO & NOLAN, PLC, Nashville, Tennessee, for Appellee. **ON BRIEF**: Joseph Louis Olson, MICHAEL BEST & FRIEDRICH LLP, Milwaukee, Wisconsin, for Appellant. Paul J. Krog, LEADER, BULSO & NOLAN, PLC, Nashville, Tennessee, for Appellee.

---

Unpublished opinions are not binding precedent in this circuit.

DAVIS, Senior Circuit Judge:

Appellant Kenneth Nelson appeals the district court's entry of a four million dollar judgment against him based on his knowing, intelligent and voluntary execution of a confession of judgment. The principal issue presented, among others, is whether, under the circumstances shown in the record, the district court's 1993 order conditionally dismissing this action effectively terminated the case such that the court lacked the power to enter a judgment against Nelson nearly twenty years later. The district court ruled that it had the power to entertain the request for judgment and we discern no error of law or abuse of discretion. Accordingly, we affirm.

I.

A.

In December 1986, Nelson guaranteed a real estate construction loan for more than $7 million made to his limited liability company, Hilton Head Hotel Investors (HHHI).[1] In August 1988, upon HHHI's default, the lender, Independence Federal Bank ("the Bank") filed this suit in South Carolina state court against HHHI and the guarantors; the defendants removed the case

---

[1] Nelson jointly guaranteed the loan with his co-venturer, Wallace H. Hustad, who is not a party to this appeal.

to federal court. The Bank's appointed receiver, Resolution Trust Corporation (RTC), was later substituted as plaintiff.

In due course, the district court entered summary judgment allowing a foreclosure of the liens securing the indebtedness. After an interlocutory appeal to this Court by defendants was withdrawn, the claims against the guarantors was set for trial in June 1993. On July 13, 1993, however, the parties having notified the district court that a settlement had been achieved, the court entered an order conditionally dismissing the case. The order stated in part:

> The court having been advised by counsel for the parties that the above action has been settled:
>
> IT IS ORDERED that this action is hereby dismissed without costs and without prejudice to the right, upon good cause shown within ninety (90) days, to reopen the action if settlement is not consummated.

J.A. 49. A July 14, 1993 entry in the district court's docket states: "case closed."

A few months later, at the parties' request, the court re-opened the case, although the docket contains no formal order "re-opening" the case. Then, on October 14, 1993, the court entered a second order conditionally dismissing the case, stating in part:

> On July 13, 1993, this Court entered an order dismissing this case without costs after being advised by counsel that this matter had been settled. The court was also advised that one of the terms of the settlement was the completion of the previously

4

> ordered sale of the real and personal property which is the subject of this action. The Court is now advised that the parties have been unable to complete the documentation of the settlement but that the parties are endeavoring to do so as expeditiously as possible.
>
> IT IS THEREFORE ORDERED that this action is hereby dismissed, upon good cause shown, and the right to reopen the action if settlement is not consummated is to be held open for an additional period of time not to exceed December 31, 1993. It is the Court's expectation that the settlement will be consummated within this period and the property which is the subject of this action will have been sold by that time at public auction as previously ordered by the Court.

J.A. 50-51.

On the basis of the above October 14, 1993 order, Nelson contends that the case finally terminated as of the December 31, 1993 deadline set forth therein. Indeed, as Nelson contends, and as the district court found, no party formally moved to re-open the case before the December 31 deadline. Nevertheless, RTC did file, on or about December 23, 1993, a so-called "Motion to Clarify," in which it sought certain rulings from the district court related to the impending auction of the real and personal property at issue in the case. Thereafter, over the course of several months in 1994, the district court conducted at least one hearing and it ruled on a number of issues regarding the foreclosure sale. The sale of the subject property at the foreclosure auction in mid-1994 garnered three million dollars

5

and the court confirmed the report of sale by order entered on July 5, 1994.

In November 1994, well after confirmation of the foreclosure auction, the parties finally executed a comprehensive Settlement Agreement. The Settlement Agreement stated, in part, that as of June 1, 1993, HHHI owed RTC principal and interest on promissory notes in the amount of $14,495,949.81. As a part of the settlement, Nelson and Hustad (the sole members of HHHI) each agreed to make installment payments to RTC totaling $80,000 over the course of two years. To secure their performance, Nelson and Hustad each signed a confession of judgment in the amount of $4 million. Specifically, the parties agreed that if either Nelson or Hustad, respectively, missed a payment, RTC could file the relevant confession of judgment with the district court and obtain judgments thereon. On the other hand, if Nelson and Hustad made all of the promised payments, the confessions of judgment would be delivered to their attorneys.

Thereafter, for the nearly seventeen years from November 1994 through September 2011, no activity of consequence occurred before the district court.[2] The district court never entered a

_____

[2] Hustad's confession of judgment was filed in the district court on May 21, 1997, but there is no indication in the record that judgment was ever sought or entered thereon.

6

final order or judgment as contemplated by Federal Rules of Civil Procedure 54 and 58 after the foreclosure sale and the parties' execution of the Settlement Agreement. The Settlement Agreement was never presented to the court or embodied in a court order.

B.

The dormancy of the case ended on September 19, 2011, during the pendency of other litigation in other courts between the parties, as described infra n.3. Appellee Orlando Residence, Ltd., asserting its status as a judgment creditor of Nelson and identifying itself as the owner of Nelson's confession of judgment, filed a motion for substitution to replace RTC as plaintiff, and for the entry of Nelson's confession of judgment.[3]

---

[3] ORL attached several documents to support its motion for substitution and for entry of the Nelson confession of judgment. It provided an Assignment of Judgment executed by Asset Recovery & Management Services, L.P. (ARMS). In the Assignment, dated November 21, 1995, ARMS stated that it had became the successor-in-interest to RTC on February 23, 1995 with regard to Nelson's confession of judgment, and that it was then assigning its rights to GP Credit Company. Specifically, ARMS assigned "all rights as Plaintiff and judgement [sic] creditor in the above-captioned cause, along with any and all right to payment of the debts which were the subject of said judgement [sic], and all collateral securing repayment of said debts." J.A. 98.

In addition, ORL provided an order from the Ozaukee County Circuit Court in Wisconsin, stating that "Ownership of the South Carolina judgment GP Credit holds against Kenneth E. Nelson pursuant to the Assignment of Judgment attached hereto . . . is hereby divested from GP Credit Co., LLC and is vested in Orlando Residence, Ltd." J.A. 100. Nelson had appealed the Ozaukee (Continued)

7

Nelson did not oppose ORL's motion for substitution, and the district court granted the motion. The court also entered the confession of judgment. The next day, on October 18, 2011, Nelson filed a motion to strike the confession of judgment. A few weeks later, ORL filed a motion to enter judgment, which Nelson opposed. After full briefing on a host of issues, the district court held a hearing on December 14, 2011.

On August 15, 2012, the district court entered an order directing the clerk to enter judgment against Nelson in favor of ORL for four million dollars and the clerk entered judgment on that date. Nelson timely moved to alter, amend, vacate, and dismiss pursuant to Federal Rules of Civil Procedure 59(e), 12(b)(1) and 12(h)(3), and in the alternative for relief from judgment pursuant to Rule 60(b).

---

County Circuit Court order. During the pendency of the instant appeal before this Court, the Supreme Court of Wisconsin declined to disturb the order of the Ozaukee County Circuit Court. See January 14, 2014 28(e) letter from E. Bulso, Jr., Esq., (attaching order in Orlando Residence, Ltd. v. Nelson, Case No. 2012AP001528 (Wis. Ct. App. Nov. 26, 2013)). Relatedly, an opinion from one of our sister circuits informs us that GP Credit is a company that was under Nelson's dominion and control and, essentially, was his "alter ego." Orlando Residence, Ltd. v. GP Credit Co., LLC, 553 F.3d 550, 558 (7th Cir. 2009). This finding came in the course of ORL's attempt to enforce a judgment obtained in a Tennessee state court against Nelson.

ORL's showing satisfied the district court that it was the rightful owner of the Nelson confession of judgment.

On March 15, 2013, the district court denied Nelson's post-judgment motions, finding, among other things, that its October 1993 dismissal order did not deprive the court of the power to enter judgment on the confession of judgment that it found Nelson had executed knowingly, intelligently and voluntarily. Orlando Residence, Ltd. v. Hilton Head Hotel Investors, No. 9:89-cv-0662, 2013 WL 1103027 (D.S.C. Mar. 15, 2013). The court also rejected Nelson's numerous arguments for relief under Rule 60(b) regarding limitations, the amount of judgment, and personal jurisdiction. Id. Nelson timely appealed.

## II.

As he did before the district court, Nelson advances a myriad of arguments in support of his assertion that the judgment entered against him must be vacated. His overarching assertion is straightforward: the district court lacked the power to enter judgment against him because, no party having moved to reopen the case as of December 31, 1993, the court's October 14, 1993 conditional dismissal effectively terminated the action on that date and thereby deprived the district court of all power over the case, save the exercise of limited, ancillary jurisdiction, such as supplementary proceedings under Federal Rule of Civil Procedure 69. Nelson further avers that although a rightful owner of the confession of judgment might be able to institute a new action against him in a proper court,

9

his defenses to such an action foreclose relief and, in any event, require a plenary proceeding consonant with due process to adjudicate his liability.

Nelson's specific contentions include the following: (1) the court lacked subject matter jurisdiction both because (a) the case fully ended as of December 31, 1993 without a reservation of jurisdiction and (b) ORL lacked standing; (2) the court lacked personal jurisdiction over Nelson; (3) ORL failed to file and serve a summons to enforce the Settlement Agreement; (4) the amount of the judgment was excessive under South Carolina law; and (5) the statute of limitations barred entry of judgment on the confession. The district court rejected all of these arguments, as do we.

A.

Nelson first contends that the district court lacked subject matter jurisdiction to enforce his confession of judgment, and therefore the judgment is void under Federal Rule of Civil Procedure 60(b)(4).

We review a district court's findings of fact with respect to subject matter jurisdiction under a clear error standard, so long as the issues are not "intertwined with the facts central to the merits of the plaintiff's claims." United States ex rel. Vuyyuru v. Jaddhav, 555 F.3d 337, 348 (4th Cir. 2009) (citation

omitted). We review any legal conclusions drawn from the facts de novo. Id.

1.

Nelson's initial challenge is based on his assertion that the district court lost jurisdiction over the case when it entered a final order of dismissal in 1993. Like the district court, we disagree with Nelson's interpretation of the record.

To be sure, "[f]ederal courts are courts of limited jurisdiction." Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994). We should presume that an action "lies outside this limited jurisdiction" and therefore "the burden of establishing the contrary rests upon the party asserting jurisdiction." Id. In Kokkonen, which is the centerpiece of Nelson's jurisdictional challenge, the Supreme Court held that where a party sought to enforce a settlement agreement after it had filed a "Stipulation and Order of Dismissal with Prejudice" executed by all the parties to the action pursuant to Fed. R. Civ. P. 41(a)(1)(ii) and endorsed by the district court, it could only do so if the court had incorporated the settlement agreement into the final order, or otherwise expressly reserved jurisdiction. Id. at 381-82. Nelson argues that Kokkonen applies here, that the conditional dismissal of the case on October 14, 1993 (effective, according to Nelson, on December 31, 1993) is indistinguishable from the dismissal in Kokkonen, and as in that

11

case, the district court was divested of jurisdiction after the December 31, 1993 deadline expired.

Nelson is mistaken. Unlike the circumstances in Kokkonen, there was no "Stipulation and Order of Dismissal with Prejudice" filed in this case or any other definitive order unambiguously terminating this action. Nelson contends that we should treat the district court's October 14, 1993 order as a final judgment dismissing the suit, but there is no warrant for us to do so. In Kokkonen, the stipulation of dismissal was executed by the parties, filed pursuant to Federal Rule of Civil Procedure 41(a)(1)(ii), and was independently "so ordered" by the district court. Id. at 377. Here, the district court ordered that the case would be conditionally dismissed, clearly on the assumption that the settlement agreement and sale of the foreclosed property were finalized by December 31, 1993. See supra p. 5 ("It is the Court's expectation that the settlement will be consummated [by December 31, 1993] and the property which is the subject of this action will have been sold by that time at public auction as previously ordered by the Court."). As the record plainly indicates, and the district court explicitly recognized, however, this did not happen.

Instead, the court continued to enter orders regarding the parties' claims through 1994, specifically orders respecting the foreclosure sale of property at issue in the suit. Importantly,

12

this began with a "Motion to Clarify" filed on December 23, 1993, asking the district court to make procedural and substantive changes to the provisions for the foreclosure sale previously ordered; these matters were of sufficient substance to necessitate the district court holding a hearing on the issues.

Nelson argues that the district court's 1994 orders did not pertain to the claims governed by the Settlement Agreement, and were solely designed to enforce an earlier judgment not involving Nelson or Hustad as guarantors. Nelson's arguments are belied by the record: the Settlement Agreement expressly held Nelson and Hustad accountable for assisting with the foreclosure sale, i.e., the subject of the district court's 1994 orders. Moreover, although the "Motion to Clarify" was not labeled as a motion to reopen the case, that is exactly how the district court and the parties treated it, and with good reason.

Among other issues to be addressed, the creditors sought (and obtained) a limitation on the commissions to be awarded to the Office of the United States Marshal for its services related to the management of the foreclosure auction. See S.A. 30-42.[4] To the extent that a reduction in commissions increased the yield

_____

[4] We shall grant ORL's unopposed motion for leave to file the Supplemental Appendix and deny leave to file a surreply.

13

from the foreclosure sale to the lenders, such a reduction could only redound to the benefit of the guarantors, as well. Thus, any suggestion by Nelson that he was uninterested in the court's consideration of the matters raised in the "Motion to Clarify" rings hollow.

The procedural posture of the case after December 31, 1993 mirrors what happened earlier in the case. The district court had entered a nearly identical order on July 13, 1993, dismissing the case and allowing for re-opening within 90 days. Despite the ostensible 90-day window for reopening, the district court acknowledged that it nonetheless reopened the case 93 days after the case was closed. See Home Port Rentals, Inc. v. Ruben, 957 F.2d 126, 131 (4th Cir. 1992) ("It is peculiarly within the province of the district court . . . to determine the meaning of its own order."). Furthermore, unlike the clerk's entry closing the case when the July dismissal order was entered, no such clerk's entry is coupled with the October 14, 1993 order.

Notably, the Settlement Agreement was not executed until a year after the entry of the October 14, 1993 order. After that, the district court neither entered a final order of dismissal, as mentioned above, nor did it treat the October 14, 1993 order as final. See Anderson v. Stephens, 875 F.2d 76, 80 n.8 (4th Cir. 1989) ("We are, of course, mindful of the inherent deference due a district court when it construes its own

14

order."). Thus, to hold on this record that the district court's October 14, 1993 order ripened into a final judgment on December 31, 1993 would be a fiction of our own creation and contrary to the treatment by the district court of its own order.

In sum, before the entry of the judgment by confession (the order before us for review), there had not been a final judgment or final order of dismissal in this case. The district court had neither relinquished nor otherwise lost jurisdiction. Unlike the circumstances in Kokkonen, the district court in this case was not asked to enforce a settlement agreement after the case had been unambiguously and finally dismissed. From the perspective of the district court, moreover, the coincidence that Nelson executed his confession of judgment incident to a settlement of litigation was just that: an irrelevant coincidence. The district court was obliged under South Carolina law merely to determine whether Nelson had executed the confession of judgment knowingly, intelligently and voluntarily. See S.C. Code § 15-35-350. He did. The court was justly unconcerned with the background circumstances that prompted him to do so. Accordingly, this case falls well outside the rule of Kokkonen, and we reject Nelson's contention to the contrary.[5]

_____

[5] A brief word about the dissent is in order. One would have thought that if it were true that this case requires "nothing more than mechanical application of the Supreme Court's decision (Continued)

15

2.

With regard to the second subject matter jurisdiction challenge, based on a lack of standing, Nelson contends that ORL

_____

in <u>Kokkonen v. Guardian Life Insurance Co. of America</u>, 511 U.S. 375 (1994)," <u>post</u>, at 29, the dissenting opinion would have been no more than the page and one half it takes to say that. But the dissent goes on for another fourteen pages excoriating the majority's reasoning. One is left to wonder, Why is that? What is it that bothers the dissent so much? The answer is fairly obvious: the district court <u>treated</u> the "Motion to Clarify" as a motion to reopen the case, and, as the dissent acknowledges, we do not apply a "magic words" rule in these circumstances. <u>Post</u> at 34 (acknowledging that "papers filed with the court need not contain any 'magic words' to effectuate their purposes"). We further agree with the dissent that "RTC's decision to caption the Motion to Clarify as it did—rather than as a "Motion to Reopen"—is not fatal to ORL's current position." <u>Post</u>, at 34.

We also agree with the dissent that this case is a ". . . convoluted procedural and substantive morass[.]" <u>Post</u>, at 42. But in addition to what the documents in the record tell about the case, we have the benefit of knowing what the district court <u>did</u> in its management of the case. Despite the dissent's scolding, we remain convinced that our interpretation of the record is the correct one. The dissent is free, of course, even in this "convoluted . . . morass" of a case, to apply its de novo standard of review to the pure legal issue of whether, assuming the "Motion to Clarify" could not plausibly be treated as a motion to reopen, the district court lost jurisdiction on January 1, 1994. We respectfully suggest, however, that the dissent is <u>not</u> <u>free</u> (no matter the number of "telltale clues" it can or cannot identify, <u>see</u> <u>post</u>, at 35) to apply a de novo standard of review to the antecedent question: whether the district court could plausibly treat the "Motion to Clarify" as a motion to reopen. If an abuse of discretion standard of review does not apply to that question, then it is difficult to imagine where it would ever apply. There was no abuse of discretion shown here, as the dissent, itself, concedes. <u>Post</u>, at 33 ("[T]he majority accords much due deference to the district court's province to interpret its own orders . . . ; that is the law surely enough, and I take no issue with this approach.").

has failed to provide sufficient evidence to establish the transfer of an interest in the confessed judgment from RTC to ORL (via ARMS and GP Credit). This argument also fails.

Article III standing requires a showing of three elements: first, the plaintiff has "suffered an injury in fact"; second, a "causal connection between the injury and the conduct complained of"; and third, it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992) (internal quotations marks and citations omitted). Nelson takes issue with the first of these – that ORL has suffered an injury.

Nelson correctly states that "[w]ithout an assignment, a nonparty to a contract does not have standing to sue on the contract." Egrets Pointe Townhouses Prop. Owners Ass'n, Inc. v. Fairfield Communities, Inc., 870 F. Supp. 110, 117 (D.S.C. 1994) (applying South Carolina law). But Nelson's insistence that there has not been a proper assignment does not make it so.

In addition to the documents establishing the conveyance of the confessed judgment from RTC to ARMS to GP Credit, ORL presents a state court judgment granting title to and possession of the confession of judgment to ORL. See Orlando Residence, Ltd. v. Nelson, 834 N.W.2d 416, 424 (Wis. Ct. App. 2013), appeal denied Orlando Residence, Ltd. V. Nelson, Case No. 2012AP001528

17

(Wis. Nov. 26, 2013). The Wisconsin state courts have spoken conclusively as to the ownership of the confessed judgment:

> The Nelsons claim that the turnover motion is moot because the underlying judgments have expired and are unenforceable. Additionally, the Nelsons claim that property already taken from them exceeds the amount of Orlando's judgment.

> In response to the Nelsons' arguments, Orlando claims that it is immaterial whether or not the judgments have expired, that Orlando's Wisconsin judgment is valid and enforceable, and that Orlando's judgment has neither expired nor been satisfied.

> Orlando is right. That is, there is nothing in §816.08, Wis. Stats., limiting Orlando's right to obtain an order assigning ownership of the South Carolina and Oklahoma judgments to it. As indicated in part II A above, Orlando's Wisconsin judgment is valid and enforceable. The Nelsons' claim that the value of property already taken from them exceeds the amount of the judgment is unsupported by any evidence and is contrary to all available information.

> ***

> For the above stated reasons, the court hereby orders the following:

> ***

> (4) Orlando's Motion for a Turnover of the GP Credit Co., LLC property is granted, and the court will sign Orlando's proposed Order forthwith.

J.A. 265.

Nelson's contentions about the validity or applicability of the Wisconsin state court judgment amount to no more than splitting hairs. Nelson makes much of the fact that the Wisconsin court referred to the confession of judgment as a "judgment" rather than the "Settlement Agreement/Confession."

18

App. Br. 36-37. There is no meaningful distinction in these terms, and it is evident from the transfer paperwork provided by ORL that the interest transferred was whatever the predecessor-in-interest had – regardless of how it was described in court papers. This is evident from the broad description in the Wisconsin judgment ("the GP Credit Co., LLC property").[6]

The district court credited the evidence provided by ORL that it was the successor-in-interest to the holder of the confession of judgment in the original case. Here, ORL has met its burden based on its pleadings and attached documentation. Nelson has done nothing more than point to the evidence adduced and stating that it is not enough. But it is enough. There is nothing in the record which would lead this Court to think "with [a] definite and firm conviction that a mistake has been committed." Simmons v. United Mortgage & Loan Inv., LLC, 634 F.3d 754, 762 (4th Cir. 2011) (quoting United States v. U.S. Gypsum Co., 333 U.S. 364, 395 (1948)), and we decline Nelson's invitation to do so.

---

[6] Nelson also makes a host of arguments regarding the admissibility of certain documents and the sufficiency of the evidence as to the transfer of the confession of judgment between RTC and ARMS. Nelson made none of these arguments to the district court and has therefore waived them. See Robinson v. Equifax Info. Servs., LLC, 560 F.3d 235, 242 (4th Cir. 2009).

B.

Nelson next contends that the district court erred by failing to conduct a plenary proceeding and that it lacked personal jurisdiction over him. Again, we disagree.

1.

Federal courts have the power to enter confession judgments, as has been recognized by courts time and again. 28 U.S.C. § 1874; see D. H. Overmyer Co. Inc., of Ohio v. Frick Co., 405 U.S. 174, 176 (1972) ("The cognovit is the ancient legal device by which the debtor consents in advance to the holder's obtaining a judgment without notice or hearing, and possibly even with the appearance, on the debtor's behalf, of an attorney designated by the holder."); Millner v. Norfolk & W. R. Co., 643 F.2d 1005, 1009 (4th Cir. 1981). As we discussed earlier, South Carolina law explicitly allows for the entry of confession judgments. S.C. Code § 15-35-350.

Nelson insists that he should have received the benefit of a plenary proceeding in order to present his defenses in a full evidentiary hearing. But this argument ignores the law allowing for this type of proceeding where authorized by state law in a diversity action, and where the waiver of full service was executed by the debtor. Where there is clear and convincing evidence that the waiver was voluntary, knowing, and intelligently made, then the confession of judgment will be

20

upheld. Overmyer, 405 U.S. at 185-87, F.D.I.C. v. Aaronian, 93 F.3d 636, 640 (9th Cir. 1996).

Millner is instructive on this point. There, Millner filed suit against his employer, and his employer then pointed to a negotiated settlement agreement as a bar to the action and a finding of liability. 643 F.2d at 1006-07. The court held a hearing on the settlement agreement, taking evidence from several witnesses and examining many documents. Id. at 1007-08. The district court held that the settlement agreement was binding, and entered an order of dismissal with prejudice. Id. at 1008. Unlike Nelson, however, Millner produced substantial evidence that he had revoked his consent to the settlement agreement, and that there was never a meeting of the minds between his counsel and the employer. Id. at 1009-10. Millner also disputed the number of claims resolved in the settlement agreement, and pointed out that he never signed the release. Id. at 1010.

Nelson does not, and cannot, generate a dispute that the Settlement Agreement appropriately binds him. Nelson is a sophisticated business person with multiple degrees in business administration and finance. He is licensed as a certified public accountant in Wisconsin, and has been a real estate broker for over 30 years. Nelson initialed each page of the Settlement Agreement, including the pages describing the confession of

21

judgment, and his counsel also signed an affidavit that he had explained the terms of the Settlement Agreement to Nelson.

Nelson executed the Settlement Agreement nearly twenty years ago with full knowledge of what he was signing, and received a release of claims worth more than $14 million. Nelson cannot take advantage of that benefit without also complying with the terms to which he agreed, including his confession of judgment. Accordingly, we reject, as did the district court, his assertion that he was entitled on this record to an evidentiary hearing.

2.

Nelson's objection based on an alleged lack of personal jurisdiction likewise fails. The district court found that Nelson had submitted to the personal jurisdiction of the district court based on the confession of judgment. South Carolina law holds that consent to the confession of judgment was equivalent to a voluntary appearance. A confession of judgment "is essentially a voluntary act; it is a voluntary submission to the jurisdiction of the court, giving by consent and without the service of process what could otherwise be obtained by summons and complaint, and other formal proceedings . . . ." Triangle Auto Spring Co. v. Gromlovitz, 242 S.E.2d 430, 431 n.1 (S.C. 1978) (quoting 49 C.J.S. Judgments § 134 (1947)).

Nelson does not dispute that he signed the Settlement Agreement which called for the filing of the confession of judgment in the district court. J.A. 76 (the confession of judgment will be "in a form suitable for recording with the Clerk of Court for the United States District Court for the District of South Carolina"). As ORL points out, the confession itself is captioned with the name of the relevant district court.

Nelson simply recycles his previous arguments regarding the court's lack of jurisdiction to continue to exercise adjudicative authority over the case following the Settlement Agreement. Nelson's arguments lack merit for the reasons discussed above. Nelson consented to the personal jurisdiction of the court by way of the confessed judgment, and cannot deny it now. The district court did not err or otherwise abuse its discretion in finding that it had personal jurisdiction over Nelson.[7]

### III.

Nelson's alternative claims relate to the denial of his Rule 60(b) motion for relief from the judgment. We review the

---

[7] Indeed, as the case never came to an end by dismissal order or otherwise, just as the district court retained subject matter jurisdiction, it also retained personal jurisdiction over the original defendants, including Nelson.

23

denial of a 60(b) motion for abuse of discretion. Aikens v. Ingram, 652 F.3d 496, 501 (4th Cir. 2011) (en banc).

A.

Nelson's next argument is that the amount due in the confessed judgment ($4 million) impermissibly exceeds the amount that was originally due under the Settlement Agreement ($80,000), in violation of South Carolina law. We disagree.

South Carolina law on confessed judgments requires that:

> Before a judgment by confession shall be entered a statement in writing must be made and signed by the defendant and verified by his oath to the following effect:
>
> (1) It must state the amount for which judgment may be entered and authorize the entry of judgment therefor;
>
> (2) If it be for the money due or to become due, it must state concisely the facts out of which it arose and must show that the sum confessed therefor is justly due or to become due; and
>
> (3) If it be for the purpose of securing the plaintiff against a contingent liability, it must state concisely the facts constituting the liability and must show that the sum confessed therefor does not exceed the liability.

S.C. Code § 15-35-360. The district court compared the $4 million owed in the confession to the amount stipulated to by Nelson and HHHI in the Settlement Agreement: $14,495,949.81. Nelson takes issue with this comparison, maintaining that the proper comparison is with the amount he owed under the Settlement Agreement ($80,000). Nelson cites to South Carolina law holding that liquidated damages provisions exceeding the sum

24

originally due on the contract are unenforceable. But, as with his other arguments, Nelson fails to read the case law carefully. South Carolina holds that where "the sum stipulated is plainly disproportionate to any probable damage resulting from breach of contract, the stipulation is an unenforceable penalty." Lewis v. Premium Inv. Corp., 568 S.E.2d 361, 363 (S.C. 2002) (emphasis added). Nelson cites no support for the contention that the proper comparison is between the amount he owed under the Settlement Agreement and the amount now owed under the confession. Accordingly, the "probable damage resulting from breach of contract," is more appropriately the $14 million figure, as it is what RTC was owed under the loan agreements originally disputed in the lawsuit.

The district court did not err or otherwise abuse its discretion in ruling that the confession damages were not an impermissible penalty.

B.

Finally, Nelson contends that the district court erred by applying the doctrine of equitable tolling as to limitations.

Nelson's argument begins with the faulty premise that South Carolina's three year statute of limitations for breach of contract claims, S.C. Code § 15-3-530, is applicable here. Nelson again recycles his arguments that under the circumstances of this case, the confession of judgment proceedings should be

25

deemed and treated as a new action. As discussed above, we reject this theory of the case.

Nevertheless, Nelson correctly asserts that enforcement of the judgment is time-limited. South Carolina law dictates that executions of final judgments must issue within ten years. S.C. Code § 15-3-530; see Linda Mc Co., Inc. v. Shore, 653 S.E.2d 279, 282-84 (S.C. Ct. App. 2007). The last payment under the Agreement was due on November 1, 1996, which Nelson accepts as the last date of a potential breach of the Settlement Agreement. Applying the statute of limitations, the confession of judgment should have been perfected by November 1, 2006.

South Carolina law allows for equitable tolling of the limitations period, however, "where it is justified under all the circumstances." Hooper v. Ebenezer Sr. Servs. & Rehab. Ctr., 687 S.E.2d 29, 33 (S.C. 2009). In Hooper, the Supreme Court of South Carolina tolled the statute of limitations for a plaintiff who was unable to serve the defendant until limitations had run, due in large part to the defendant's failure to properly list its registered agent for service with the Secretary of State. Id. at 33-34. The court held that "public policy and the interests of justice" warranted equitable tolling. Id. at 34.

The district court relied on Magnolia North Property Owners' Association, Inc. v. Heritage Communities, Inc., 725 S.E.2d 112 (S.C. Ct. App. 2012), to determine that equitable

26

tolling was appropriate in this case. There, a homeowners' association in a condo development sued the developers for various claims surrounding construction defects. Id. at 117. The developer claimed that because the homeowners' association did not file suit until May 2003, limitations barred the claim, which allegedly accrued in March 2000, when the association commenced meetings and operations. Id. at 125. However, the facts revealed that the developers effectively controlled the homeowners' association until sometime in September 2002. Id. The court held that it found "unpersuasive Appellants' claim that an organization they controlled would have initiated an action against itself during this period." Id. Nelson argues that the reasoning of Magnolia North does not apply to this case because he could not be "disloyal" to GP Credit as GP Credit is his "alter ego." App. Br. 64-65.

This logic is confounding at best. The exact point of the court's holding in Magnolia North was that the developers would hardly file suit against themselves; here, it would be preposterous to think that GP Credit would file a confessed judgment against Nelson because that would amount to Nelson obtaining a judgment against himself.

The district court did not abuse its discretion in holding that the statute of limitations was tolled for the 18 years GP Credit held the confessed judgment, thwarting all efforts by the

27

rightful judgment creditors to take possession. Therefore, ORL's filing of the confession of judgment was not time-barred.

## IV.

We GRANT ORL's unopposed motion for leave to file the Supplemental Appendix and we DENY the motion for leave to file a surreply. The judgment of the district court is

AFFIRMED.

28

FLOYD, Circuit Judge, dissenting in part:

I do not think that the district court maintained subject matter jurisdiction over this case once the October 14, 1993 dismissal order became final on January 1, 1994. I therefore would not reach the merits of ORL's claim for $4 million based on Nelson's confession of judgment and very respectfully dissent to Part II.A.1 of the majority's opinion.

## I.

This case requires nothing more than mechanical application of the Supreme Court's decision in Kokkonen v. Guardian Life Insurance Co. of America, 511 U.S. 375 (1994), and any attempt to meaningfully distinguish it falters under a more exacting review. Although I recognize that the dismissal in Kokkonen was pursuant to a stipulation by the parties under Federal Rule of Civil Procedure 41(a)(1)(ii), the Supreme Court was clear that district courts' authority in such a situation is no different than when dismissal is court-ordered pursuant to Rule 41(a)(2), as it was in this case. In summarizing its holding, the Court stated the following:

> The short of the matter is this: . . . . When the dismissal is pursuant to Federal Rule of Civil Procedure 41(a)(2), which specifies that the action "shall not be dismissed at the plaintiff's instance save upon order of the court and upon such terms and conditions as the court deems proper," the parties' compliance with the terms of the settlement contract (or the court's "retention of jurisdiction" over the settlement contract) may, in the court's discretion,

29

be one of the terms set forth in the order. <u>Even when, as occurred here, the dismissal is pursuant to Rule 41(a)(1)(ii)</u> (which does not by its terms empower a district court to attach conditions to the parties' stipulation of dismissal) we think the court is authorized to embody the settlement contract in its dismissal order or, what has the same effect, retain jurisdiction over the settlement contract[] if the parties agree.

<u>Id.</u> at 381-82 (emphasis added).

Thus, that "[i]n <u>Kokkonen</u>, the stipulation of dismissal was executed by the parties, filed pursuant to Federal Rule of Civil Procedure 41(a)(1)(ii), and was independently 'so ordered' by the district court[,]" <u>ante</u> at 12, does not differentiate <u>Kokkonen</u> from this case for any pertinent purpose. The district court in this case maintained no greater authority than the district court in <u>Kokkonen</u>, and insofar as both district courts failed to exercise that authority, the result—a want of subject matter jurisdiction—should be the same.

The majority's couching of the district court's October 14, 1993 order as having "conditionally dismissed" the case, <u>ante</u> at 12 (emphasis deleted), results from picking language from that order and imputing into it meaning where there is none. Plainly and simply, the order dismissed the action—sans any "if-then" Boolean-like operators and sans any conditions precedent—and to characterize the district court's "expectation that the settlement will be consummated" either as a reservation of subject matter jurisdiction or as a retention of the power to

30

enforce the settlement agreement has zero basis in the law and runs smack into the Supreme Court's central holding in <u>Kokkonen</u> and this Court's cases applying the same. <u>Kokkonen</u>, 511 U.S. at 381 ("The judge's mere awareness and approval of the terms of the settlement agreement do not suffice to make them part of his order."); <u>see</u> <u>Smyth ex rel. Smyth v. Rivero</u>, 282 F.3d 268, 283 (4th Cir. 2002) ("Where a court merely recognizes the fact of the parties' agreement and dismisses the case because there is no longer a dispute before it, the terms of the agreement are not made part of the order and consequently will not serve as a basis of jurisdiction. . . . This rule is interpreted to require that the district court give a <u>clear indication</u> that it is incorporating the terms of the agreement into that order or retaining jurisdiction over the agreement." (emphasis added) (paragraph break omitted)).

To be sure, though, the October 14, 1993 order did provide to RTC "the right to reopen" the lawsuit; but any reopening required some triggering action (e.g., the filing of a motion). Final dismissal, on the other hand, was to be the default disposition of the case on January 1, 1994, absent that triggering action (hence, the right to "reopen" the action and not the right to "effectuate/finalize dismissal" if settlement is consummated). Thus, to the extent that dismissal was at all "conditional[]," it was so upon RTC <u>not</u> filing a motion to

31

reopen, which, as explained below in Part II, it did not do. The district court therefore became divested of subject matter jurisdiction on January 1, 1994.

The majority contends that the December 23, 1993 Motion to Clarify was, in essence, a motion to reopen the case. Before addressing the Motion to Clarify on the merits, however, I note that the weakness in the majority's "conditional dismissal" theory is highlighted by the very presence of a second basis as to why the district court retained subject matter jurisdiction. In other words, if the dismissal was truly conditional upon the parties consummating settlement, as the majority claims, it is curious, then, that the majority would need to defend on alternative footing its position that the district court had subject matter jurisdiction based on a motion that purported to reopen the case. It is undisputed that the parties did not consummate settlement prior to the December 31, 1993 deadline, and based on the majority's view of the conditional effect of the October 14, 1993 order, that solitary fact alone should end the inquiry: no settlement, no dismissal, case continues.

Still, the majority endeavors to justify the existence of subject matter jurisdiction on several alternative bases, each of which becomes transparent when viewed under a more scrupulous microscope.

32

The Motion to Clarify could be more aptly described as an ancillary and administrative "motion to follow the law" rather than a seminal "motion to reopen," as the majority views it. As an initial matter, the majority accords much due deference to the district court's province to interpret its own orders, see ante at 14; that is the law surely enough, and I take no issue with this approach. But the majority is disloyal in its adherence to that framework because the district court itself stated plainly that nobody moved to reopen the case. In the March 15, 2013 order (the order on appeal) regarding Nelson's motion pursuant to Rules 59(e), 12(b)(1), 12(h)(3), and 60(b), the district court recited the relevant facts of the case as follows: "The case was again dismissed [on October 14, 1993] 'with right to reopen if settlement is not consumated [sic] before 12/31/1993.' Nobody moved to reopen the case before the December 31, 1993 deadline." (J.A. 417 ([sic] in original) (emphasis added) (quoting entry 117 on the docket sheet).)

If the district court were truly "treat[ing]" the Motion to Clarify as a motion to reopen, as the majority contends, ante at 13, one can only assume that the district court would have mentioned that motion at this factual juncture before jumping right into the November 1994 settlement. Perhaps, even if the district court were silent regarding the presence or absence of

33

a motion to reopen, there might be room to debate whether the Motion to Clarify was, in effect, a motion to reopen; but not only did the district court make no mention of the all-important Motion to Clarify, the district court further affirmatively stated that, "Nobody moved to reopen the case before the December 31, 1993 deadline." Thus, in claiming that the Motion to Clarify was, in essence, really a motion to reopen, the majority all but concludes that the district court committed clear error in its recitation of the facts as stated in the March 15, 2013 order.

Not surprisingly, there is a dearth of record support for the notion that the district court and the parties (referring to RTC, not ORL) treated the Motion to Clarify as a motion to reopen due to failed settlement negotiations. Although I recognize that RTC's decision to caption the Motion to Clarify as it did—rather than as a "Motion to Reopen"—is not fatal to ORL's current position, see Belk, Inc. v. Meyer Corp., U.S., 679 F.3d 146, 157 (4th Cir. 2012), nowhere in the Motion to Clarify (or the subsequent Amended Order of Foreclosure) are the words "settlement" or "reopen" ever mentioned. That being said, I further recognize that papers filed with the court need not contain any "magic words" to effectuate their purposes. See Stevenson v. City of Seat Pleasant, 743 F.3d 411, 418 (4th Cir. 2014). But certainly, if RTC and the district court truly

34

viewed the Motion to Clarify as one to reopen, one would expect that there would be some mention of—or at a bare minimum, a fleeting reference to—the failed settlement negotiations, the December 31, 1993 deadline to settle, or the October 14, 1993 dismissal order setting forth that deadline.[1]  But each of these telltale clues that the parties and the district court treated the Motion to Clarify as one to reopen are apparitions.

Aside from RTC's request to waive its claim for a deficiency judgment (which I address in greater detail below), the Motion to Clarify essentially asked the district court to follow the proper procedure for foreclosing on a property pursuant to a judicial sale where the Office of the U.S. Marshal has not seized the property which is the subject of the action; in short, the Motion to Clarify simply asked the district court to follow the law.  The majority elevates the district court's proper application of the rule of law as effecting "procedural and substantive changes to the provisions for the foreclosure sale," ante at 13, but ignores the fact that the foreclosure sale was a foregone conclusion, and the requested relief regarding the legally proper procedure for executing the sale

---

[1] By glaring contrast, in the October 14, 1993 order, the district court refers expressly to (1) the July 13, 1993 order of dismissal and (2) the fact that the parties were "unable to complete the documentation of the settlement." (J.A. 50.)

had no bearing on any pending settlement agreement. At the end of the day, all RTC was doing was getting its ducks in a row to prepare for what was inevitable.

The principal flaw of the majority's view that the Motion to Clarify somehow reopened the case is to read that motion in a piecemeal fashion. The majority provides a lone purportedly "good reason" for why the parties and the district court treated the Motion to Clarify as a motion to reopen: Nelson supposedly had an interest in the Motion to Clarify because "a reduction [in commission awarded to the Office of the U.S. Marshal] could only redound to the benefit of the guarantors." Ante at 13–14. But this rationale relies on an incomplete reading of the Motion to Clarify and a fundamental misunderstanding of the nature of the foreclosure proceedings. And just as with the majority's high-level comparison of the facts of Kokkonen with the facts of this case, the Devil is in the details.

In addition to seeking to limit the commission to the Office of the U.S. Marshal, the Motion to Clarify also sought to waive RTC's right to a deficiency judgment against Nelson on both mortgages. A deficiency judgment is "[a] judgment against a debtor for the unpaid balance of the debt if a foreclosure sale . . . fails to yield the full amount of the debt due." Black's Law Dictionary 918–19 (9th ed. 2009). Thus, when RTC waived its right to a deficiency judgment, RTC essentially let

36

Nelson "off the hook" for any discrepancy between the amount that RTC would obtain from the foreclosure sale and the remaining balance owed on the loans. Nelson therefore had no interest in whether the Office of the U.S. Marshal received a commission because he was not required to make up the difference to RTC, even if precluding the Office of the U.S. Marshal from receiving a commission would benefit RTC directly.

Indeed, if Nelson was so interested in the Motion to Clarify, as the majority claims, query then: why did he not file any motions or other papers either supporting or opposing that motion? Instead, rather than taking a position—any position—on the Motion to Clarify, Nelson was an absolute ghost on the docket sheet from at least as early as the October 14, 1993 dismissal order until 2011 after ORL entered the confession of judgment. In fact, the only "parties" who appear to have participated in the hearing regarding the issues raised in the Motion to Clarify were RTC and the U.S. Attorney's Office on behalf of the Marshal's Service—not Nelson. (See J.A. 56 ¶ 10; id. at 57 ¶ 15.)

By reading in a silo-like fashion RTC's separate prayers for relief in the Motion to Clarify, the majority misses the big picture, and its "good reason" for treating the Motion to Clarify as a motion to reopen is gainsaid by the very document that it relies upon.

37

III.

The majority makes two other arguments to support its position; but like the arguments before them, these arguments similarly fall short and incomplete of the jurisdictional goal line.

1.

First is the notion that "[t]he procedural posture of the case after December 31, 1993 mirrors what happened earlier in the case," ante at 14, specifically, what happened ninety-three days after the district court entered its July 13, 1993 dismissal order. That order stated: "IT IS ORDERED that this action is hereby dismissed without costs and without prejudice to the right, upon good cause shown within ninety (90) days, to reopen the action is settlement is not consummated." Although the district court did reopen the case after expiration of the ninety-day period, a plain reading of that order reveals that it was not the reopening of the case that must have occurred within ninety days, but rather the showing of good cause to reopen. In the March 15, 2013 order, the district court recounted the relevant facts surrounding the reopening of the case after the July 13, 1993 dismissal order as follows: "The case was closed on that same day, but the parties later returned to court. Although the docket does not reflect the date on which the

38

parties asked for the case to be reopened, the court reopened the case 93 days after the July 13, 1993 Order."[2] (J.A. 416.)

Accordingly, because we do not know when, exactly, the parties came to the court to reopen the case, the majority's statement that the district court "nonetheless reopened the case 93 days after the case was closed," ante at 14, is nothing but a red herring—a straw-man that, even when set ablaze, sheds no light on the relevant issue. At best for the majority, the circumstances surrounding the district court's handling of the July 13, 1993 dismissal and reopening of the case are neutral.[3]

---

[2] I note that the March 15, 2013 order is the exact same order wherein the district court stated that, subsequent to the October 14, 1993 order, "Nobody moved to reopen the case before the December 31, 1993 deadline." (J.A. 417.) Thus, inasmuch as the district court recited that "the parties asked for the case to be reopened" after the July 13, 1993 order, but on the very next page of that order recited that the parties did not "move[] to reopen the case before the December 31, 1993 deadline," the court was perfectly capable of determining what constituted a motion/request to reopen. This only further pulls the rug out from under the majority's supposition that the district court somehow treated the Motion to Clarify as a motion to reopen.

[3] But in reading Part II.A.1 of the majority opinion as a whole, the notion that "[t]he procedural posture of the case after December 31, 1993 mirrors what happened earlier in the case" based on "nearly identical" language in the dismissal orders, ante at 14, only further undermines the "conditional dismissal" theory. If the language in the two dismissal orders is "nearly identical," one would expect that the effect of that language would also be nearly identical. Under the "conditional dismissal" theory, the case was at no point in time ever actually closed/dismissed pursuant to the July 13, 1993 order because dismissal was conditioned upon settlement and the parties did not settle. Yet, the district court thought that it needed to reopen the case and did so on October 14, 1993, due to (Continued)

39

2.

Finally, the majority attempts to make hay by putting a spin on the absence of a clerical order of dismissal following the October 14, 1993 order (whereas the clerk entered such an order subsequent to the July 13, 1993 dismissal order). This argument invokes the classic tale of the dog that did not bark in the night-time. See generally Arthur Conan Doyle, The Silver Blaze, in The Memoirs of Sherlock Holmes (1892). To wit, the conspicuous absence of any subsequent dismissal order indicates that the October 14, 1993 order was intended to serve as such. The order's effect, therefore, is best understood by looking at what order did not follow. (It is surprising that the majority would even attempt to make this absent-order argument in view of its due deference to the district court's autonomy and handling of its own docket. See ante at 14. For indeed, the district court itself noted that when it reopened the case after the July 13, 1993 dismissal order, the parties' request that it do so is "not reflect[ed]" on the docket sheet. (J.A. 416.))

Regardless, I agree with the majority that the October 14, 1993 order was not a "final" order at the time that it was

_____

"the parties [being] unable to complete the documentation of the settlement." (See J.A. 50.) But if the case was never actually closed/dismissed, why would the district court have thought that the case needed to be "reopened"?

40

entered; but it became final on January 1, 1994, when the period for reopening the case expired without settlement and without either party moving to reopen. At this point, the district court became divested of subject matter jurisdiction. The majority's contrary result above runs afoul of well-settled law and, regrettably, all but creates an undesirable circuit split.

In Berke v. Bloch, a case with facts and dismissal language very similar to the facts and dismissal language in this case, the district court dismissed a lawsuit "'without costs and without prejudice to the right, upon good cause shown, within 60 days, to reopen the action if the settlement is not consummated.'" 242 F.3d 131, 134 (3d Cir. 2001). "[T]he [plaintiffs] undertook no action within the prescribed sixty (60) day period following entry of the District Court's order." Id. The Third Circuit, in concluding that the order dismissing the case constituted a final order, stated the following:

> When a District Court dismisses a case pending settlement, and grants the [plaintiffs] leave to re-file within a set period of time, the order cannot be considered final for the purposes of appeal on the date it was entered. Typically, conditional dismissals based on imminent settlement include a fixed period of time to reach settlement terms. While these types of dismissals may keep the parties' "feet to the fire" by giving them a deadline to conclude settlement, they cannot be considered final. Instead, if terms are reached, and/or the plaintiff makes no attempt to re-open the litigation, the order ripens into a final, appealable order upon the expiration of the fixed time period.

41

_Id._ at 135 (emphasis added); _see_ _Longo v. First Nat'l Mortg. Sources_, 523 F. App'x 875, 877–78 (3d Cir. 2013) (applying the rule from _Berke_ and stating the following: "In its May 9 Order, the District Court dismissed the case 'without prejudice to the right, upon good cause shown within 60 days, to reopen the action if the settlement is not consummated.' Thus, the May 9 Order . . . bec[a]me final . . . 60 days after it was entered[.]").

The result is no different in this case. _Jung v. K. & D. Mining Co._, 356 U.S. 335, 337 (1958) (per curiam) (holding that a court order "dismissing 'th[e] cause of action'"—not the clerk's subsequent entry of a judgment—is what "constituted the 'final judgment' in the case," even though the Rule 58 clock to appeal did not start to tick until separate entry of that judgment (second internal quotation marks added)); _see also_ _Morris v. City of Hobart_, 39 F.3d 1105, 1110 (10th Cir. 1994) (holding that an "Administrative Closing Order [giving] the parties sixty days to reopen the proceedings . . . . mature[d] into final judgment and, [because] no action [was] taken to resolve the case, satisfie[d] the separate document requirement of Rule 58" (citation omitted)).

## IV.

In sum, _Kokkonen_ controls: the convoluted procedural and substantive morass that this twenty-year-old case became is

42

partly the product of the failure by the parties and the district court to notice that, when all was said and done, what the court was being asked to do in granting judgment on the confession was simply enforcing the settlement agreement. The dismissal order respecting that agreement did not "embody" the agreement or "retain jurisdiction" over it. Kokkonen, 511 U.S. at 381–82. Moreover, because the Motion to Clarify did not seek to reopen the case, as a careful review of that motion and the subsequent related order plainly reveals, the October 14, 1993 order matured into a final dismissal order on January 1, 1994.

With great condemnation for Nelson's unlawful and evasive behavior, and with sympathy for ORL's struggles to obtain the money that it appears to be rightfully owed, I simply do not think that the district court had subject matter jurisdiction. I therefore would not reach the merits of ORL's claim and, very respectfully, dissent to Part II.A.1 of the majority's opinion.